[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
September 15, 2006
THOMAS K. KAHN
CLERK

_____

No. 06-10210
Non-Argument Calendar
_____

D. C. Docket No. 04-00298-CV-3-J-32HTS

MICHAEL LEE MONGEAU,

Plaintiff-Appellant,

versus

JACKSONVILLE SHERIFF'S OFFICE, et al.,

Defendants,

S. M. FARRIS, Ofc,
D. B. EDMONDS, Ofc,
M.E. GORSAGE, Ofc,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

**(September 15, 2006)**

Before BLACK, CARNES and PRYOR, Circuit Judges.

PER CURIAM:

Michael Lee Mongeau, proceeding pro se, appeals the district court's order granting final summary judgment on behalf of Jacksonville Sheriff's officers, Farris, Edmonds, and Gorsage. We affirm.

## I.

On September 8, 2003, Michael Mongeau, was arrested following two separate high speed police chases. The first chase began that morning when Mongeau ignored a patrolling officer's attempts to pull him over. Several other officers joined the pursuit which lasted for over two hours. Mongeau eventually evaded the officers by parking the car and entering a local mall. The second chase began several hours later when Mongeau left the mall. The plaintiff was far more reckless during this second pursuit, running red lights and entering the highway going the wrong direction. The police used "stop-sticks" to end the chase, and Mongeau lost control of the car and crashed into a light pole.

Several officers approached the immobilized vehicle with guns drawn, and Mongeau held his hands up in plain view. The officers instructed Mongeau to get out of the car, but he told them that he was stuck because his seatbelt was jammed in the locked position. Mongeau was semi-unconscious and in a state of shock

2

from the accident and was therefore slow in responding to the officers' instructions. Further, he claims that he could not keep his hands raised as ordered because of his injuries. When Mongeau lowered his hands and failed to exit the vehicle, Officer Gorsage released a police dog through the window. Mongeau protested and fought the dog. Gorsage recalled the canine, and the officers again told Mongeau to get out of the car and raise his hands. When he failed to comply, Sergeant White approached the vehicle and sprayed Mongeau with pepper spray to incapacitate him. Nonetheless, Mongeau still failed to raise his hands, and the dog was deployed a second time. Officer Farris was present but took no steps to prevent this second attack. The dog was called off when Mongeau again put his hands up. Subsequently, several officers reached through the passenger window and pulled Mongeau out of the car. They slammed him onto the ground, and beat his head and back in an attempt to subdue him. They eventually were able to handcuff him. Officer Edmonds then placed his knee on Mongeau's upper back and neck to keep him on the ground, even though he was no longer struggling. The entire incident was captured on videotape by a camera attached to one of the pursuing officer's patrol car.

An ambulance arrived on the scene shortly after Mongeau was handcuffed, and the paramedics cleaned his wounds. Officer Farris then drove him to the

county jail, but upon arrival, Farris was instructed to first take Mongeau to the hospital for treatment. After two hours at the hospital, Mongeau was charged with felony fleeing or attempting to elude, grand theft auto, and reckless driving. The state later dismissed the grand theft auto and reckless driving charges.

Mongeau filed a lawsuit against all three officers, claiming that they employed excessive force in his arrest in violation of 42 U.S.C. § 1983. Specifically, he claimed that: 1) Farris failed to intervene when the police dog was deployed for the second time; 2) Edmonds used excessive force in placing his knee on Mongeau's back when Mongeau was handcuffed on the ground; 3) Gorsage used excessive force in deploying the canine twice; 4) all three officers had a history of violating police procedures and receiving reprimands; 5) all three officers failed to follow protocol; and 6) Mongeau suffered injuries from the dog attack.

Defendants Farris, Edmonds, and Gorsage responded by filing a motion for summary judgment, raising qualified immunity as an affirmative defense. They contended that they acted in good faith, within the scope of their duties, and in a manner they reasonably believed to be consistent with the law and procedures of the Jacksonville Sheriff's Office. Even if Mongeau could establish a viable constitutional violation, the officers asserted that they are nonetheless protected by

4

qualified immunity.

The district court entered an order on December 21, 2005, granting the defendants' motion for summary judgment as to all claims. The court found that the videotape of the incident demonstrated that the arrest occurred quickly and efficiently and that there was no evidence of excessive force. Furthermore, the court held that the officers' actions were objectively reasonable in light of the totality of the circumstances and that the officers were justified in fearing Mongeau as a real threat. This appeal followed.

**II.**

We review a grant of summary judgment de novo, resolving any genuine dispute of material fact in favor of the nonmoving party. Zipperer v. City of Fort Myers, 41 F.3d 619, 622 (11th Cir. 1995). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). We review a denial of sanctions under an abuse of discretion standard. Phipps v. Blakeney, 8 F.3d 788, 790 (11th Cir. 1993).

5

## III.

### A.

Mongeau contends that genuine issues of material fact exist as to whether the force employed by the officers was excessive in violation of the Fourth Amendment. He claims that the record demonstrates factual conflicts and that he was trying to cooperate with the officers but was limited by his injuries.

The officers respond that the evidence, even as construed in favor of the plaintiff, demonstrates that their actions were reasonable given the facts. Looking at the totality of the circumstances and the facts known to them, the officers argue that they were justified in believing that Mongeau was dangerous and willing to take any risk to elude capture.

In dealing with a Fourth Amendment excessive force claim, the question becomes "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them," taking into account that "police officers are often forced to make split-second judgments---in circumstances that are tense, uncertain, and rapidly evolving---about the amount of force that is necessary in a particular situation." Graham v. Connor, 490 U.S. 386, 396–97, 109 S. Ct. 1865, 1872 (1989). This reasonableness inquiry "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision

of hindsight." Id. at 396, 109 S. Ct. at 1872. We have held that:

> [W]e are not to view the matter as judges from the comfort and safety of our chambers, fearful of nothing more threatening than the occasional paper cut as we read a cold record accounting of what turned out to be the facts. We must see the situation through the eyes of the officer on the scene who is hampered by incomplete information and forced to make a split-second decision between action and inaction in circumstances where inaction could prove fatal.

Crosby v. Monroe County, 394 F.3d 1328, 1333–34 (11th Cir. 2004).

Additionally, it has been "long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Graham, 490 U.S. at 396, 109 S. Ct. at 1871–72. The amount of force that a police officer reasonably can use without being excessive, however, depends on the totality of the circumstances, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id.

Thus, in determining whether the officers' conduct in this case was reasonable, we are to consider the totality of the circumstances as viewed by the officers in the heat of the moment, bearing in mind these four significant facts. First, Mongeau was charged with three serious crimes: grand theft auto, reckless driving, and felony fleeing or attempting to elude. Second, Mongeau's

7

recklessness in evading capture clearly posed great danger to both the officers pursuing him and numerous civilians. He ran traffic lights, sped, and even entered the highway going the wrong direction. This conduct reasonably led the officers to believe that Mongeau had little regard for his own life or others. They justifiably feared that he might be armed. Third, Mongeau resisted arrest by refusing to get out of the car and repeatedly refusing to raise his hands, which reasonably could have led the officers to believe that he might reach for a weapon. Fourth, Mongeau was a flight risk, as evidenced by the high speed chase and his refusal to cooperate with the officers. The totality of the circumstances, including these four facts, establish that the conduct of the officers in restraining and incapacitating Mongeau was not excessive.

## 1.

Specifically, the use of the canine was objectively reasonable because Mongeau admitted that he responded slowly to the officers' orders to show his hands and failed to keep his hands raised. Based on his prior dangerous conduct, the officers reasonably believed that Mongeau might be reaching for a weapon or about to flee each time he dropped his hands. The dog was used only briefly when Mongeau failed to comply with the officers' orders. Mongeau admits that the dog was called off when he followed the orders. Both the first and second deployment

8

of the dog were reasonable in the circumstances. Because the use of the dog was reasonable, Officer Farris' failure to intervene to prevent that use was also reasonable.

Mongeau cites Chew v. Gates, 27 F.3d 1432 (9th Cir. 1994), to support his contention that the use of the police dog was unreasonable. The Chew case is distinguishable from this one. First, the dog used in Chew was sent to locate a concealed suspect and was out of the handler's sight. Id. at 1441. As a result, the handler could not stop the dog's attack. Id. By contrast, in this case, the handler was present and the dog was instantly called off once Mongeau complied with the officers' orders by raising his hands. Second, in Chew there was no basis for concern that the suspect was armed or dangerous. Id. at 1442. In this case, the officers reasonably feared that Mongeau might have a weapon and was willing to go to desperate extremes to escape. Third, the officers in Chew had ample time to consider their tactics in apprehending the suspect, id. at 1443, while the officers in our case had to make high risk, split-second decisions. Whatever we might decide if the facts of Chew were before us, they are not. Under the facts of this case the deployments of the dog to prevent Mongeau from obtaining a weapon or fleeing were reasonable under the circumstances.

**2.**

Additionally, Edmonds placement of his knee on Mongeau's back to subdue him was objectively reasonable given Mongeau's previous resistance and risk of flight. Some degree of physical force is necessary in making an arrest where the suspect has refused to comply with the officers' orders. See Graham 490 U.S. 396, 109 S. Ct. at 1871–72. The videotape of the arrest shows that once Mongeau was handcuffed the officers stopped using force against him, except that which was necessary to hold him down and ensure that he did not flee.

**3.**

Finally, Mongeau contends that the defendants failed to follow proper procedure both in using pepper spray and in failing to provide medical attention after use. First, the use of pepper spray here was objectively reasonable for the same reasons that it was reasonable to use the dog and to hold Mongeau down after he was handcuffed. The defendants had a reasonable fear that Mongeau was armed and dangerous, and they were justified in incapacitating him before removing him from the vehicle and in holding him down once he was outside the vehicle. Second, Mongeau's claims that the officers failed to follow protocol in providing immediate medical assistance are unfounded. The Operational Order of the Jacksonville Sheriff's Office mandates that medical assistance be provided "as

10

soon as practical" after a chemical weapon is used. Mongeau admitted in his deposition that an ambulance arrived shortly after he was removed from the car and that paramedics cleaned his wounds. Additionally, the videotape shows that emergency personnel were on the scene within twenty minutes of Mongeau's removal from the vehicle. Thus, Mongeau's claim that the district court failed to consider whether the officers' properly adhered to pepper spray procedure is without merit.

**B.**

Mongeau asserts that the officers are not entitled to qualified immunity because they were not acting within the scope of their discretionary authority. As we have noted, no constitutional violation occurred under the present facts, so we need not reach the issue of whether they would be entitled to qualified immunity if a violation had occurred.

**C.**

Finally, Mongeau contends that the defendants failed to comply with his discovery requests for photographs and the transcript of the deposition of an unknown defense witness. He claims that without these materials he could not sufficiently prepare his case. He calls for a reversal of the grant of summary judgment, an order compelling the requested discovery, and sanctions.

11

The record reflects that the officers responded in a timely manner to the court's discovery order. They provided Mongeau with photographs, videotapes, and final action reports, and appropriately objected to his discovery requests that were vague or overly broad. The defendants turned over everything in their possession, including more than 1,200 pages of documents. There was no discovery violation and no basis for sanctions.

## D.

To the extent that Mongeau is suing the defendants in their official capacity, the district court properly ruled that any such claim fails, because Mongeau did not present any evidence of a custom or policy that deprived him of his constitutional rights. He is not challenging the procedures themselves, but rather is alleging that the defendants failed to properly follow those procedures. Thus, no valid official capacity claim exists.

AFFIRMED.