Rogoz v. City of Hartford

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

- - - - - -

August Term, 2014

(Argued: April 22, 2015        Decided: August 10, 2015)

Docket No. 14-0876

_____

DAVID ROGOZ,

Plaintiff-Appellant,

- v. -

CITY OF HARTFORD; CHIEF DARYL K. ROBERTS, in his individual and official capacity; DETECTIVE G. WATSON, in his individual and official capacity; DETECTIVE RIVERA, in his individual and official capacity; OFFICER GEORGE WATER, in his individual and official capacity; OFFICER JAMES RUTKAUSKI, in his individual and official capacity; OFFICER BRANDON FLORES, in his individual and official capacity; OFFICER STEVEN J. PILESKI, in his individual and official capacity; OFFICER CESAR A. BEIROS, in his individual and official capacity,

Defendants-Appellees.[*]

_____

Before: KEARSE, PARKER, and WESLEY, Circuit Judges.

Appeal from a judgment entered in the United States District Court for the District of Connecticut, Vanessa L. Bryant, Judge, dismissing, on summary judgment, plaintiff's claims

---

[*]    The Clerk of Court is instructed to amend the official caption to conform with the above.

brought principally against defendant police officers under 42 U.S.C. § 1983 for use of excessive force in the course of arrest, in breaking one of plaintiff's ribs and breaking his spine in two places after he had unresistingly complied with orders to lie on the ground face down with his hands behind his back. See Rogoz v. City of Hartford, No. 3:11-CV-00500, 2013 WL 3816580 (D. Conn. July 22, 2013).

Affirmed in part, vacated and remanded in part.

A. PAUL SPINELLA, Hartford, Connecticut (Spinella & Associates, Hartford, Connecticut, on the brief), for Plaintiff-Appellant.

NATHALIE FEOLA-GUERRIERI, Senior Assistant Corporation Counsel, Hartford, Connecticut, for Defendant-Appellee City of Hartford.

WILLIAM J. MELLEY III, Hartford, Connecticut, for Defendants-Appellees Watson, Rivera, Water, Rutkauski, Flores, Pileski, and Beiros.

KEARSE, Circuit Judge:

Plaintiff David Rogoz appeals from a final judgment entered in the United States District Court for the District of Connecticut, Vanessa L. Bryant, Judge, summarily dismissing all of his claims against defendants City of Hartford (the "City"), individual detectives and officers in the City's Police Department (together the "police officer defendants"), and the City's Chief of Police, arising out of Rogoz's arrest in May 2009, during which, the police officer defendants concede for purposes of this appeal, Rogoz's rib was broken and his spine was broken in two places. On appeal, Rogoz seeks reinstatement only of (a) his claim under 42 U.S.C. § 1983 against defendant Detective G. Watson for use of excessive force, (b) his claims under § 1983 against the other defendant police detective and five defendant police officers (collectively the "other officers" or the "other police officers") for failure to intervene to prevent Watson's use of excessive force, and (c) his claims under

2

state law that are related to his federal claims of excessive force. Rogoz contends principally that, in granting summary judgment in favor of Watson and the other officers on those claims, the district court, which found that Watson used only reasonable force and was entitled to qualified immunity, see Rogoz v. City of Hartford, No. 3:11-CV-00500, 2013 WL 3816580 (D. Conn. July 22, 2013) ("D.Ct. Op."), erred in failing to view the record in the light most favorable to Rogoz as the party opposing summary judgment. For the reasons that follow, we agree that summary judgment dismissing the § 1983 claim against Watson for use of excessive force was error; we vacate so much of the judgment as dismissed that claim and the analogous state constitutional claim and as declined to exercise supplemental jurisdiction over Rogoz's state-law claims relating to the alleged use of excessive force by Watson, and we remand for further proceedings with respect to those claims. We affirm the dismissal of Rogoz's claims against the other police officers.

## I. BACKGROUND

Most of the facts are undisputed; and certain other facts have been admitted by the police officer defendants for the purpose of defending summary judgment on this appeal.

### A. The Events

It is undisputed that on May 8, 2009, shortly after 11:00 a.m., Rogoz drove to the vicinity of Lawrence Street in Hartford, Connecticut (hereafter the "Lawrence Street area"), "a hot spot area for illegal drug activity," D.Ct. Op., 2013 WL 3816580, at *3 (internal quotation marks omitted), and, through the window of his vehicle, bought $50 worth of heroin. Rogoz then turned onto a one-

way street and pulled over to the curb. A red Honda pulled in directly behind him. Rogoz promptly drove on and pulled over to the curb farther down the street. The red Honda then pulled in front of Rogoz, and a man exited. In an attempt to get away from the Honda man, Rogoz began to back his car up the one-way street, and the man began running toward him. When Rogoz saw a car coming behind him, he ceased backing up; drove forward over the curb and onto the sidewalk to pass the Honda man before reentering the roadway; and drove off at an unreasonably high rate of speed. He eventually reached a highway, the scene of his arrest.

Rogoz's brief on appeal describes the events after he reached the highway in flight from the Honda man, and the police officer defendants have "no material disagreements" (Brief on appeal for defendants-appellees Watson and the other officers ("Watson brief on appeal") at 5) with the following description:

> [After] Rogoz . . . fled through the City of Hartford, [he] eventually dr[ove] onto Route 2 eastbound; . . .
>
> Rogoz did not realize that he was being pursued by police vehicles until he saw the police lights and heard the sirens; . . .
>
> Upon this realization, Rogoz immediately pulled over onto the shoulder of the highway; . . .
>
> When Rogoz stopped the vehicle, Rogoz was directed by an officer to exit the vehicle with his hands up, and he complied; . . .
>
> Rogoz was ordered by the officers to lay face down on the ground with his hands behind his back, and he complied; . . .
>
> Rogoz complied with each of the officers' commands, and did not resist in any way; . . .
>
> Rogoz was lying face down on the ground, with his hands behind his back, awaiting to be handcuffed, when one of the officers, believed to be George Watson, jumped onto Rogoz's back, landing knees first. . . . The force

4

of the impact fractured one of Rogoz's ribs and fractured his spine in two places . . . .

(Rogoz brief on appeal at 5-6 (internal quotation marks omitted) (emphases ours).) Watson and the other officers state in their brief on appeal that they "accept for the purpose of this Motion for Summary Judgment Plaintiff's characterization that Detective George Watson jumped on Mr. Rogoz's back, landing knees first, and fracturing Mr. Rogoz's ribs and spine." (Watson brief on appeal at 5-6 (emphases added).)

B. The Present Action and Defendants' Motion for Summary Judgment

Rogoz was charged with three state-law crimes: possession of narcotics, reckless driving, and disobeying an officer's signal to stop in order to escape. He pleaded guilty to the narcotics charge and was fined $300; the other two charges were dismissed.

Rogoz commenced the present § 1983 action in 2011 against the City, its Chief of Police, and the police officer defendants, asserting various claims under, inter alia, the Fourth Amendment and state law in connection with his arrest, including false arrest, false imprisonment, and use of excessive force. To the extent pertinent to this appeal, which pursues only the excessive-force-related claims against the police officer defendants and the City, the complaint included allegations that, at the Lawrence Street area, the man who exited the red Honda had "charged toward the Plaintiff's vehicle" and "failed to identify himself as a police officer in any respect" (Complaint ¶ 15 (emphasis added)); that Rogoz had fled the area "[b]elieving himself to be in imminent danger" (id. ¶ 16); that when Rogoz became aware on the highway that he was being pursued by police officers, he immediately stopped his vehicle on the shoulder of the highway (see id. ¶¶ 17-18); and that he

5

"complied with the Defendant Officers' commands to show his hands, exit his vehicle and lie face down with his hands behind his back, offering no resistance of any sort" (id. ¶ 19 (emphasis added)). Then,

> [w]hile the Plaintiff was on the ground, the Defendant Officers subjected his upper back to severe physical assault, causing him to suffer excruciating pain . . . .
>
> 21. After the Plaintiff was placed in custody, he requested but did not receive prompt medical care for two days.
>
> 22. Upon finally receiving medical care, the Plaintiff was informed that he had sustained severe muscular strain and multiple fractures to his back and ribs.

(Complaint ¶¶ 20-22.)

In his deposition, Rogoz testified that when he was in the Lawrence Street area he had no idea who the man who exited the Honda was. "He never showed nothing, you know. I had no idea who it was . . . ." (Deposition of David William Rogoz ("Rogoz Dep.") at 86; see also id. at 67 ("Q. Do you recall any gesture from the person that was in this Honda at all to you, any arm movement, anything like that? A. No, no.").) Rogoz testified, "[i]t's not the best area over there" (id. at 67-68), and that he "was trying to get out of there. . . . I just didn't know what was going on. I was afraid" (id. at 65).

As to his arrest, Rogoz testified that when he had lain face down on the ground as instructed,

> that was when . . . someone came up on me, and it was boom. Someone like threw all their weight on me. I could feel like their knees in my back smashed me, smashed my face into the pavement."

(Rogoz Dep. at 79.) "It felt like he like jumped, you know. . . . [I]t seemed like, you know, he just

like jumped on me is what it felt like, just hit so hard." (Id. at 80.) "It seemed like he ran up and jumped with his weight onto my back . . . ." (Id. at 81.) The officer who jumped on Rogoz's back then handcuffed him; since a police report said that Rogoz was handcuffed by Watson, Rogoz inferred that the officer who jumped on his back was Watson. (See id. at 84-85.)

In an affidavit opposing defendants' motion for summary judgment, Rogoz's description of the scene of his arrest on the highway was similar to the allegations in his complaint:

[w]hen I saw the [police] lights I immediately pulled over onto the shoulder of the highway.

11. After I stopped, the police officers ordered me to show my hands, to exit the vehicle and to lie face down with my hands behind my back, and I complied with their directions, and did not resist in any way.

12. While I was lying on the ground, one or two of the defendant officers jumped onto me with their knees, landing on my back.

13. The force of the impact fractured one of my ribs and fractured my spine in two places, and my face was slammed into the ground.

(Affidavit of David Rogoz dated December 24, 2012 ("Rogoz Aff."), ¶¶ 10-13.) Rogoz said that "although [he] was in horrible pain from [his] injuries [he] initially did not ask for medical treatment because [he] was afraid of the police." (Id. ¶ 14.)

Defendants' motion for summary judgment dismissing Rogoz's excessive force claims was accompanied by, inter alia, a Statement pursuant to Local Rule 56(a)1 of the facts defendants contended were undisputed ("Defendants' Rule 56(a)1 Statement"), by documents including a police incident report filed by Watson on the date of Rogoz's arrest ("Watson Report" or "Report"), and by a memorandum of law ("Defendants' Summary Judgment Memorandum"). In his Report, Watson stated that he had been surveilling the Lawrence Street area and observed what appeared to be a

purchase of narcotics by Rogoz, followed by Rogoz's parking nearby at "a common location where drug users pull over and ingest the recently purchased drugs." (Watson Report at 2.) Watson stated, "I parked my vehicle in front of Rogoz and approached the passenger side of his vehicle. I had my badge displayed while verbally identifying myself as Hartford Police." (Id.) The Report contains a description of Rogoz's ensuing flight that is similar, although not identical, to Rogoz's own description. With regard to Rogoz's arrest on the highway, Watson stated in the Report that, after being "stopped by marked Hartford police vehicles[,] . . . . Rogoz was taken out at gun point and laid onto the ground at which time I approached and handcuffed him." (Id.) The Report made no mention of any application of force.

In their Rule 56(a)1 Statement, defendants described Rogoz's actions in the Lawrence Street area much as those actions had been recounted by Rogoz and the Watson Report. Defendants stated that after Watson exited the red Honda and "approach[ed] Rogoz's" car, "Rogoz tried to get away" (Defendants' Rule 56(a)1 Statement ¶¶ 7-8); but their Rule 56(a)1 Statement did not assert that Watson had identified himself to Rogoz as a police officer. Defendants' Rule 56(a)1 Statement stated that on the highway, Rogoz had complied with officers' directions to exit his car and to lie face down on the ground with his hands behind his back (see id. ¶¶ 16-17); it made no mention of any injury to Rogoz's back.

In their accompanying memorandum of law, defendants argued that "[i]rrespective of whether Detective Watson," as Rogoz alleged, "'jumped' on him with his weight and knee placed on the plaintiff's back which caused him to suffer a back injury," Watson was entitled to summary judgment on the merits because "it was objectively reasonable for Detective Watson to have used force" (Defendants' Summary Judgment Memorandum at 14) on the basis that Rogoz was charged

with serious crimes (see id. at 16), "posed an immediate threat to the safety of the officers or others" (id.), and had "attempted to evade arrest by flight" (id. at 17). Defendants also argued that "[e]ven assuming plaintiff's version of events is true[ for purposes of] summary judgment," Watson would be entitled to summary judgment on the basis of qualified immunity because Rogoz did not have "a clearly established right not to be subject to having the force employed by Detective Watson to effectuate his arrest under these circumstances presented to Detective Watson." (Id. at 18 n.1.) And defendants argued that the police officer defendants other than Watson were entitled to summary judgment because Rogoz was unable to show any "personal involvement" in the use of force against Rogoz "by any of the defendant officers[] aside from Detective Watson." (Id. at 11.)

In his affidavit opposing defendants' summary judgment motion, Rogoz denied having knowingly fled from, or having intended to flee from, law enforcement. He stated:

> 4. I did not know that th[e red Honda that pulled in front of me in the Lawrence Street area] was a City of Hartford police vehicle, or that the vehicle contained police officers.

> 5. One of the occupants quickly exited the vehicle and ran toward the passenger door of my car.

> 6. I did not know that the person running toward my car was a police officer, and this person did not identify himself as an officer in any way.

(Rogoz Aff. ¶¶ 4-6 (emphases added).)


C. The Decision of the District Court

The district court granted the motion to dismiss Rogoz's excessive force claims, adopting the arguments put forth by defendants. See D.Ct. Op., 2013 WL 3816580, at *12. The court rejected Rogoz's contention that Watson's use of force was unreasonable because Rogoz was unaware

in the Lawrence Street area that Watson was a police officer, and that Rogoz had fled only from an unidentified man who he reasonably suspected was threatening him, not from law enforcement officials. Noting that "Watson recounted in his Report that he 'approached the passenger side of [the] vehicle' with his badge displayed and verbally identified himself as Hartford Police," id. at *3, the court found it "eminently reasonable for Detective Watson to believe . . . that Rogoz had fled after Watson had identified himself as a police officer verbally and by displaying his badge," id. at *14. The court found that "[a]lthough Rogoz had complied with the officers' orders to pull over [on the highway], exit his vehicle, and lie face down on the ground, he did so only after having failed to obey Watson's orders to stop [i]n [the Lawrence Street area] . . . ." Id. at *15. The court reasoned that,

> [b]ased on the totality of the circumstances known to Detective Watson at the time, it was reasonable for Watson to conclude that quickly transferring his weight to Mr. Rogoz's back and ribs--after having followed Mr. Rogoz's urgent flight from law enforcement through Hartford's streets--in order to assure that Rogoz did not resume this flight, to ensure the safety of Mr. Rogoz, the officers on the scene, and other drivers on the side of a busy highway, and to effectuate Rogoz's arrest would not violate Mr. Rogoz's right to be free from the use of excessive force. [S]ome degree of physical force is incident, and even necessary, to making an arrest, especially in situations where the suspect has previously refused to comply with the officers' orders. . . . Here, Rogoz had actively resisted Watson's attempt to apprehend him after he had purchased heroin. It was reasonable for Watson to employ some force against Rogoz after Rogoz's traffic stop given that Watson had witnessed first-hand Rogoz's earlier volatility in response to his attempt to stop Rogoz.

Id. (internal quotation marks omitted) (emphases ours).

The district court also concluded that Watson was entitled to qualified immunity. It stated that

> Watson . . . reported that as he approached Rogoz's vehicle he displayed his badge and verbally identified himself as a police officer. While Rogoz disputes that Watson provided identification, his dispute is tempered by the urgency with which Rogoz undertook to flee a perceived dangerous situation

10

and his inability to recall any details as to the individual who approached his car. Given the circumstances, while it was perhaps reasonable for Rogoz to have believed that Watson was not a police officer, it was also reasonable for Watson to believe that Rogoz had attempted to flee from law enforcement by way of reckless driving and to respond accordingly. Thus, even if Watson's use of force was constitutionally excessive, it was based heavily on a reasonable mistake of fact and thus merits qualified immunity.

D.Ct. Op., 2013 WL 3816580, at *16 ("not" emphasized in original; other emphases added).

The court also stated that it was not clearly established law "that a use of force to subdue an individual in circumstances akin to those in this case, after the individual has fled from police but prior to the individual being placed in handcuffs on the side of a highway, would violate such an individual's Fourth Amendment rights." Id. at *17 (emphases in original). It stated that

while the right to be free from the use of excessive force under the Fourth Amendment is clearly established, Green[ v. Montgomery], 219 F.3d [52,] 59 [(2d. Cir. 2000)], the right of a potential felon who has just engaged in a drug transaction and has fled from law enforcement to be free from an officer's forceful placement of his weight on such suspect's back to effectuate the suspect's arrest and to keep him from fleeing is much less clearly defined.

D.Ct. Op., 2013 WL 3816580, at *17 (citing Davis v. Callaway, 3:05-CV-00127, 2007 WL 1079988 (D. Conn. Apr. 9, 2007) (emphases ours)).

"On the other hand," the district court noted, "courts often find to be excessive similar force used against an arrestee . . . where the arrestee offered no resistance." D.Ct. Op., 2013 WL 3816580, at *17 (emphases added). See, e.g., id. (noting that summary judgment has been found inappropriate in a case involving the use of "gratuitous force beyond what [wa]s necessary to subdue" (internal quotation marks omitted)).

The court granted summary judgment dismissing Rogoz's failure-to-intercede claims against the police officers other than Watson on the ground that Rogoz had presented no evidence that

11

the other officers had an opportunity to intervene. It noted that Rogoz claimed that Watson ran and jumped on his back, a single instantaneous application of force, and it concluded that no reasonable jury could "conclude that the officers on the scene of Rogoz's arrest had a realistic opportunity to prevent the injuries he allegedly sustained." Id. at *19 (internal quotation marks omitted).

Having concluded that Rogoz's federal excessive-force-related claims against all of the police officer defendants lacked merit, the court dismissed on the merits Rogoz's analogous state-law claims, declined to exercise supplemental jurisdiction over other state-law claims, and found it unnecessary to address his state-law claims against the City for negligent infliction of harm or for indemnification, see Conn. Gen. Stats. §§ 52-557n, 7-465. See D.Ct. Op., 2013 WL 3816580, at *18, *24-*25.

## II. DISCUSSION

On appeal, Rogoz contends principally that the district court failed to view the record in the light most favorable to him and to draw all reasonable inferences in his favor, and thereby erred in ruling (a) that Watson's jumping on Rogoz's back with sufficient force to break his rib and break his spine in two places was reasonable as a matter of law, (b) that Watson was entitled to qualified immunity as a matter of law with respect to the use of such force, and (c) that the other police officer defendants had no reasonable opportunity to prevent the use of excessive force by Watson. For the reasons that follow, we conclude that the district court erred in granting summary judgment in favor of Watson.

A.  Summary Judgment Principles

"A motion for summary judgment may properly be granted--and the grant of summary judgment may properly be affirmed--only where there is no genuine issue of material fact to be tried, and the facts as to which there is no such issue warrant the entry of judgment for the moving party as a matter of law."  Kaytor v. Electric Boat Corp., 609 F.3d 537, 545 (2d Cir. 2010) ("Kaytor"); see Fed. R. Civ. P. 56(a); see, e.g., Jasco Tools, Inc. v. Dana Corp., 574 F.3d 129, 151 (2d Cir. 2009) ("Jasco"). "The function of the district court in considering the motion for summary judgment is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists."  Kaytor, 609 F.3d at 545; see, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986) ("Liberty Lobby").

> In reviewing the evidence and the inferences that may reasonably be drawn, the court "may not make credibility determinations or weigh the evidence . . . . 'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'"  Reeves[ v. Sanderson Plumbing Products, Inc.], 530 U.S. [133,] 150 . . . [(2000)] (quoting Liberty Lobby, 477 U.S. at 255 . . . (emphases ours)); see, e.g., Agosto v. INS, 436 U.S. 748, 756 . . . (1978) ("a district court generally cannot grant summary judgment based on its assessment of the credibility of the evidence presented").

Kaytor, 609 F.3d at 545-46.

"Summary judgment is inappropriate when the admissible materials in the record 'make it arguable' that the claim has merit," id. at 545 (quoting Jasco, 574 F.3d at 151 (other internal quotation marks omitted)), "for the court in considering such a motion '"must disregard all evidence favorable to the moving party that the jury is not required to believe,"'" Kaytor, 609 F.3d at 545 (quoting Jasco, 574 F.3d at 152 (quoting Reeves, 530 U.S. at 151 (emphasis in Jasco))). And in light of "the fact-specific nature of the inquiry" on an excessive force claim (see Part II.B. below), "granting

13

summary judgment against a plaintiff on [such a claim] is not appropriate unless no reasonable factfinder could conclude that the officers' conduct was objectively unreasonable," Amnesty America v. Town of West Hartford, 361 F.3d 113, 123 (2d Cir. 2004) ("Amnesty America").

In sum, summary judgment is proper only when, if all permissible inferences and credibility questions are resolved in favor of the party against whom judgment is sought, "there can be but one reasonable conclusion as to the verdict," Liberty Lobby, 477 U.S. at 250, i.e., "it is quite clear what the truth is," Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 467 (1962) (internal quotation marks omitted).

B. The Fourth Amendment, Excessive Force, and Qualified Immunity

"Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Graham v. Connor, 490 U.S. 386, 396 (1989). However, it is also well established that law enforcement officers violate the Fourth Amendment if the amount of force they use is "'objectively [un]reasonable' in light of the facts and circumstances confronting them." Id. at 397. "[P]roper application" of "[t]he test of reasonableness" in this context

> requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. See Tennessee v. Garner, 471 U.S.[ 1], 8-9 [(1985)] (the question is "whether the totality of the circumstances justifie[s] a particular sort of . . . seizure").

Graham, 490 U.S. at 396 (internal quotation marks omitted) (emphases ours). Further,

> [t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments--in circumstances that

14

are tense, uncertain, and rapidly evolving--about the amount of force that is necessary in a particular situation.

Id. at 396-97. "The 'reasonableness' of" the amount of force used thus "must be judged from the perspective of a reasonable officer on the scene . . . . at the moment" the force is used. Id. at 396; see, e.g., Maxwell v. City of New York, 380 F.3d 106, 108 (2d Cir. 2004) ("Maxwell"); Amnesty America, 361 F.3d at 123; O'Bert ex rel. Estate of O'Bert v. Vargo, 331 F.3d 29, 36 (2d Cir. 2003). In sum, the "standard" to be applied in determining whether "the amount of force" used exceeded the amount that was "necessary" in the particular circumstances is "reasonableness at the moment." Graham, 490 U.S. at 396, 397; see, e.g., Amnesty America, 361 F.3d at 123 ("In other words, the factfinder must determine whether, in light of the totality of the circumstances faced by the arresting officer, the amount of force used was objectively reasonable at the time.").

The doctrine of "[q]ualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." Reichle v. Howards, 132 S. Ct. 2088, 2093 (2012); see, e.g., Tracy v. Freshwater, 623 F.3d 90, 95-96 (2d Cir. 2010); Papineau v. Parmley, 465 F.3d 46, 55 (2d Cir. 2006). Officials are "entitled to qualified immunity [when] their decision was reasonable, even if mistaken," Hunter v. Bryant, 502 U.S. 224, 229 (1991); the doctrine "'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law,'" id. (quoting Malley v. Briggs, 475 U.S. 335, 343, 341 (1986)). "[W]hen a defendant official invokes qualified immunity as a defense in order to support a motion for summary judgment, a court must consider two questions: (1) whether the evidence, viewed in the light most favorable to the plaintiff, makes out a violation of a statutory or constitutional right, and (2) whether that right was clearly

15

established at the time of the alleged violation." Tracy v. Freshwater, 623 F.3d at 96 (emphasis added).

In the present case, we have several problems with the grant of summary judgment to Watson, both on the merits of the excessive force claim--as to which Rogoz of course has the burden of proof--and on the issue of qualified immunity--an affirmative defense on which Watson has the burden of proof either at trial or on a motion for summary judgment, see, e.g., Gomez v. Toledo, 446 U.S. 635, 640 (1980). As to the merits, at least two of the Graham factors that must be considered in determining whether the force used was necessary or was instead excessive could not properly be found to have been established as a matter of law. Defendants stated as undisputed facts that on the highway, when Rogoz "noticed two Hartford Police cruisers with lights activated," he "pulled over"; that "Rogoz was directed by an officer to exit his vehicle with his hands up, and he complied"; and that "Rogoz was directed by officers to lay face down on the ground with his hands behind his back, and he complied." (Defendants' Rule 56(a)1 Statement ¶¶ 15-17.) Accordingly, the police officer defendants expressed in their brief on appeal "no material disagreements" (Watson brief on appeal at 5) with Rogoz's assertions that, before Watson broke his back and rib, Rogoz had "complied with each of the officers' commands" and had "not resist[ed] in any way" (Rogoz brief on appeal at 6). Based on these facts a jury could easily infer that Rogoz--out of his car, prone on the ground, and compliant when Watson jumped on his back--did not "pose[] an immediate threat to the safety of the officers or others" and was not "actively resisting arrest or attempting to evade arrest by flight," Graham, 490 U.S. at 396. That permissible inference could not properly be rejected as a matter of law.

The police officer defendants contend that it is "[im]material" that Rogoz "was complying with officers' directions at the very moment in time that force was used against him."

16

(Watson brief on appeal at 7.) This contention is meritless for two reasons. First, it is contrary to the Graham principle that, in the assessment of "[t]he 'reasonableness' of a particular use of force . . . from the perspective of a reasonable officer on the scene" in light of the particular circumstances, a "standard of reasonableness at the moment applies," 490 U.S. at 396. While the district court found that "the totality of the circumstances sp[oke] to a level of urgency that preclude[d] a finding in Rogoz's favor," D.Ct. Op., 2013 WL 3816580, at *15, we cannot agree that that is so as a matter of law. Given the undisputed facts that on the highway, Rogoz had pulled over when he noticed the police vehicles, had complied with officers' orders to exit his car, and had complied with their orders to lie face down on the ground with his hands behind his back, and had done so without any show of resistance, a jury could find that, by that time, there was no urgency that necessitated jumping on Rogoz's back. And if the jury were to find that Watson in fact proceeded to jump on Rogoz's back with such force that he broke Rogoz's rib and/or his spine, it could well find that Watson had used more force than was necessary. Of course, the jury is not compelled to find either that Watson jumped on Rogoz's back--an assertion by Rogoz that is conceded by the police officer defendants only "for the purpose of" defending "Summary Judgment" (Watson brief on appeal at 5-6)--or that the amount of force used by Watson in fact broke Rogoz's spine and rib, an issue that remains in dispute. But if Watson jumped on the back of the prone, compliant Rogoz, breaking his spine and rib, it is surely at least arguable that the force used was excessive.

Second, in seeking to divert focus from the undisputed fact that Rogoz was compliant and prone on the ground with his hands behind him at the moment Watson jumped on his back, the police officer defendants argue that we must consider "the undisputed facts that led up to the moment of his arrest," which they describe as "including . . . Rogoz's attempt to evade a law officer" (Watson

17

brief on appeal at 7 (emphasis added)). And indeed, this view of Rogoz as having previously tried to escape capture by law enforcement was a major premise of the district court's grant of summary judgment in favor of Watson. See, e.g., D.Ct. Op., 2013 WL 3816580, at *15 (stating that "Rogoz had actively resisted Watson's attempt to apprehend him after he had purchased heroin" (emphasis added); referring to "Rogoz's urgent flight from law enforcement through Hartford's streets" (emphasis added); stating that Watson's use of force was reasonable "to assure that Rogoz did not resume this flight" (emphasis added); stating that force is reasonable "where the suspect has previously refused to comply with the officers' orders" (internal quotation marks omitted) (emphases ours)). The court also found, in concluding that Watson was entitled to qualified immunity, that "it was . . . reasonable for Watson to believe that Rogoz had attempted to flee from law enforcement . . . ." Id. at *16 (emphases added). Thus, both as to the merits of Rogoz's excessive force claim and as to Watson's defense of qualified immunity, the district court's conclusion that the force Watson used was warranted, or was reasonably believed to be warranted, rested on the premise that Rogoz, in fleeing from the Lawrence Street area, was knowingly fleeing from law enforcement.

Yet the only factual foundation for the proposition that Rogoz had fled "from law enforcement" and had "previously" refused to comply with an "officer['s]" orders was the premise that Watson, in the Lawrence Street area, had identified himself to Rogoz as a police officer. That premise, however, was clearly in dispute. Although defendants argue on this appeal that Watson, after exiting the Honda in the Lawrence Street area, "held up his badge and identified himself as a police officer" (Watson brief on appeal at 4; see also City brief on appeal at 2), Rogoz stated in his affidavit opposing summary judgment that the man who exited the Honda "did not identify himself as an officer in any way" (Rogoz Aff. ¶¶ 4-6; see also Rogoz Dep. at 67, 86 (the man who exited the Honda did not

18

make "any gesture" or "any arm movement," "[h]e never showed nothing")). Thus, defendants' contention that Watson identified himself as a police officer in the Lawrence Street area was nowhere mentioned in their Rule 56(a)1 Statement of undisputed facts. Indeed, defendants' memorandum of law purported to accept Rogoz's version of the facts (see, e.g., Defendants' Summary Judgment Memorandum at 17 (arguing that Watson was entitled to summary judgment in his favor "[e]ven assuming the facts as Plaintiff presents them are true"); id. at 18 n.1 ("[e]ven assuming plaintiff's version of events is true")); and the "FACTUAL BACKGROUND" section of their memorandum stated that when Watson's Honda pulled in front of Rogoz's car in the Lawrence Street area, "Plaintiff drove quickly away from" the Honda "[b]elieving he was in imminent danger," as the "detective[ who] exited the vehicle and ran toward the passenger door of Plaintiff's car, . . . 'failed to identify himself as a police officer in any respect'" (id. at 2 (citing and quoting Complaint ¶¶ 14-16 (emphases ours))).

The district court nonetheless found that it was "eminently reasonable for Detective Watson to believe . . . that Rogoz had fled after Watson had identified himself as a police officer verbally and by displaying his badge," D.Ct. Op., 2013 WL 3816580, at *14 (emphasis added). But if in fact Watson, in the Lawrence Street area, did not identify himself as a police officer in any way, there was no basis in the record for the district court's findings (a) that Rogoz had previously resisted arrest, or (b) that he had knowingly fled from law enforcement officers, or (c) that Watson could reasonably believe Rogoz had resisted arrest or fled from law enforcement.

The district court disregarded the dispute as to whether Watson had identified himself in the Lawrence Street area, apparently finding Rogoz's affidavit and deposition testimony not credible. The court said that,

[w]hile Rogoz disputes that Watson provided identification, his dispute is

19

tempered by the urgency with which Rogoz undertook to flee a perceived dangerous situation and his inability to recall any details as to the individual who approached his car.

D.Ct. Op., 2013 WL 3816580, at *16 (emphasis added). This may explain why the court itself would not credit Rogoz's statement that Watson did not identify himself. But Rogoz's assertions as to this material fact, made under oath in his affidavit and his deposition, clearly created a genuine dispute. The question of Rogoz's credibility was a matter for the factfinder; it was not a matter that the court could properly resolve on a motion for summary judgment.

In addition to making a credibility determination and resolving against Rogoz the material factual issue of whether Watson had identified himself to Rogoz as a police officer, the district court failed in other respects to view the record in the light most favorable to Rogoz. In finding that it was "reasonable for Detective Watson to conclude that subduing Mr. Rogoz quickly and efficiently by putting his knee or knees on Mr. Rogoz's back immediately before . . . handcuff[ing him]," D.Ct. Op., 2013 WL 3816580, at *15 (emphases added), and that Watson was entitled to qualified immunity because it was clearly established that such action was reasonable, see id., the district court analogized to cases such as Mongeau v. Jacksonville Sheriff's Office, 197 F. App'x 847, 851 (11th Cir. 2006), in which an officer placed his knee on an arrestee's back to subdue him, after the arrestee had resisted and had refused to exit his vehicle; Massaro v. Jones, 323 F. App'x 68, 70 (2d Cir. 2009), in which the officers dealt with a suspect who they knew had previously been convicted of crimes involving weapons and who had hesitated before complying with their orders; and Davis v. Callaway, 2007 WL 1079988, in which, as the district court here noted, the officers dealt with a suspect who had been involved in an altercation, and who had obeyed an order to sit on the ground but then "jumped up to protest treatment of [an]other arrestee," D.Ct. Op., 2013 WL 3816580, at *15.

20

These cases are not analogous to the present case, however, if the record here is viewed properly, in the light most favorable to Rogoz as the party opposing summary judgment. Viewed in that light, there was no resistance by Rogoz to the officers' orders, no history of crimes of violence, and no disobedience; he was entirely compliant; he was already subdued.

The court also failed to view the evidence in the light most favorable to Rogoz in analyzing the amount of force that was employed against him. In discussing excessive force principles, the court referred neither to any break or fracture of any of Rogoz's bones, nor to any violent conduct such as a jump onto Rogoz's back. Rather, it referred, for example, to the propriety of using "[s]ome degree of physical force," id. (internal quotation marks omitted) (emphasis added); to whether "[i]t was reasonable for Watson to employ some force against Rogoz," id. (emphasis added); to "plac[ing] a knee (or knees) on [Rogoz's] back," id. at *9 (emphasis added); to Watson's "putting his knee or knees on Mr. Rogoz's back," id. at *15 (emphasis added); to "put[ting] his weight on Rogoz's back to effectuate his arrest," id. at *17 (emphasis added). The question was not whether "some" force was unnecessary, or whether Watson's "put[ting]" his "weight" and "plac[ing]" his "knee" on Rogoz's back was acceptable; it was whether, with the record viewed in the light most favorable to Rogoz, with Rogoz prone on the ground and compliant, Watson's jumping on his back with such force as to break his spine and rib was excessive.

Having framed the issue as whether "[s]ome degree of force" and "plac[ing]" "weight" on a suspect's back could be reasonable, the court found that Watson was entitled to qualified immunity on the basis that the law was not clearly established that such force would violate a suspect's rights under the Fourth Amendment. However, actions by officers far less extreme than jumping on the back of a prone and compliant suspect, and apparently resulting in injuries far less serious than

21

broken spines and ribs, had long been held sufficient to support a Fourth Amendment claim of use of excessive force. See, e.g., Maxwell, 380 F.3d at 109 (a 2004 decision reversing a grant of summary judgment dismissing an excessive force claim where an officer shoved the plaintiff into the back seat of a police car and the plaintiff's head "struck a hard surface of the car" causing "pain in[] her arm and lower back and . . . a post-concussive syndrome" (internal quotation marks omitted)); see also id. at 108 ("we have permitted a plaintiff's claim to survive summary judgment on allegations that, during the course of an arrest, a police officer twisted her arm, 'yanked' her, and threw her up against a car, causing only bruising, Robison v. Via, 821 F.2d 913, 924-25 (2d Cir. 1987)"). In light of these rulings, no officer in 2009 could reasonably have believed it permissible under the Fourth Amendment to jump on the back of a prone and compliant suspect gratuitously, with sufficient force to break his spine and rib.

Finally, had the district court properly disregarded defendants' contention that Watson had identified himself to Rogoz as a police officer in the Lawrence Street area--as it was required to do on a summary judgment motion, since a jury would be entitled to discredit such trial testimony by Watson--the court could not have found that the law was insufficiently clear for Watson to know he was violating Rogoz's Fourth Amendment rights. Without Watson's identifying himself as an officer, there was no evidence whatever that Rogoz had disobeyed any police order or had in any way resisted arrest. As the court itself noted, "courts often" have found the "gratuitous" use of "similar force" against an arrestee "where the arrestee offered no resistance," to be "excessive." D.Ct. Op., 2013 WL 3816580, at *17 (emphases added).

For the foregoing reasons, we conclude that Watson was not entitled to summary judgment either on the merits of Rogoz's excessive force claim or on Watson's defense of qualified

immunity to that claim. We vacate so much of the judgment as dismissed Rogoz's Fourth Amendment claim against Watson for the use of excessive force.

Given the reinstatement of that claim, we also vacate the district court's dismissals of Rogoz's state-law claims that were related to it, including the analogous state constitutional claim that the court found meritless, the state-law claims as to which the court declined to exercise supplemental jurisdiction because all federal claims were being dismissed, and the claims against the City under Conn. Gen. Stats. §§ 52-557n, 7-465, for negligent infliction of harm or for indemnification, which the court found it unnecessary to address.

C. Failure To Intercede

We affirm the entry of summary judgment in favor of the defendant police officers other than Watson substantially for the reasons stated in the district court's opinion. In order for a law enforcement officer to be held liable for another officer's use of excessive force, "there must have been a realistic opportunity [for the former] to intervene to prevent the harm from occurring." Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994).

As Rogoz described his arrest, when he placed himself prone on the ground as instructed, "that was when" Watson "ran up and jumped . . . onto my back" (Rogoz Dep. at 79, 81). As Rogoz's counsel stated at oral argument of this appeal, Rogoz described Watson's jumping on his back as "fairly immediate." Rogoz did not proffer any evidence from which a juror could rationally infer that the officers who were present had a realistic opportunity to prevent Watson's jump.

23

## CONCLUSION

We have considered all of the parties' arguments on this appeal, and, except as indicated above, have found them to be without merit. The judgment of the district court is vacated to the extent that it dismissed Rogoz's § 1983 claim against Watson for the use of excessive force and his state-law claims related to the use of excessive force; in all other respects the judgment is affirmed. The matter is remanded for further proceedings not inconsistent with this opinion.

Costs to plaintiff.