*Kee v. City of New York*

# United States Court of Appeals
## for the Second Circuit

_____

August Term 2020

(Argued:  April 30, 2021     Decided:  August 30, 2021)

No. 20-2201-cv

_____

TITO KEE,

*Plaintiff-Appellant*,

— v. —

THE CITY OF NEW YORK, DETECTIVE RUDY ANZALONE, LIEUTENANT JOHN RYAN,

*Defendants-Appellees*.[*]

_____

Before:      LOHIER, BIANCO, *Circuit Judges*, ABRAMS, *District Judge*.[**]

On New Year's Eve 2015, New York City police officers arrested Plaintiff-Appellant Tito Kee for alleged violations of state drug laws.  More than seven months later, state prosecutors did not oppose Kee's motion to dismiss the charges on speedy trial grounds.  Kee appeals from a judgment of the United States District Court for the Eastern District of New York (Matsumoto, *J.*), challenging the

_____

[*]  The Clerk of Court is respectfully instructed to amend the caption as set forth above.

[**]  Judge Ronnie Abrams, of the United States District Court for the Southern District of New York, sitting by designation.

dismissal of his claims under 42 U.S.C. § 1983 for false arrest, malicious prosecution, and denial of a right to a fair trial against defendants New York City Police Department Detective Rudy Anzalone and Lieutenant John Ryan, as well as his state law malicious prosecution claims against the City of New York, Detective Anzalone, and Lieutenant Ryan.

We conclude that the district court properly granted summary judgment on Kee's false arrest claim because probable cause existed for his arrest on the charge of loitering for the purpose of gambling. With respect to the federal malicious prosecution claim, we hold that the district court erred in concluding that the dismissal of Kee's underlying narcotics charges on speedy trial grounds could not satisfy the "favorable termination" element for that claim. We also find that the record evidence raises disputed issues of material fact that preclude summary judgment on the issue of probable cause for the federal and state malicious prosecution claims, and that the district court's dismissal of these claims on summary judgment against the City and Detective Anzalone was unwarranted. Similarly, we conclude that there was sufficient evidence to overcome summary judgment on the fair trial claim based upon allegedly fabricated evidence conveyed to the prosecutors.

Accordingly, we **VACATE** the district court's dismissal of Kee's malicious prosecution claims against Detective Anzalone and the City and his fair trial claim against Detective Anzalone and Lieutenant Ryan, we **AFFIRM** the district court's grant of summary judgment in all other respects, and we **REMAND** the case to the district court for further proceedings consistent with this opinion.

> MICHAEL LUMER, Lumer Law Group, New York, NY, *for Plaintiff-Appellant*.
>
> JULIE STEINER (Richard Dearing, Ingrid R. Gustafson, *on the brief*) *for* James E. Johnson, Corporation Counsel of the City of New York, New York, NY, *for Defendants-Appellees*.

_____

JOSEPH F. BIANCO, *Circuit Judge*:

On New Year's Eve 2015, Plaintiff-Appellant Tito Kee was arrested in Staten Island for alleged violations of state drug laws by New York City Police Department ("NYPD") Detective Rudy Anzalone and NYPD Lieutenant John Ryan (together, "individual defendants"). More than seven months later, Kee moved to dismiss the charges on speedy trial grounds, and state prosecutors did not oppose. Kee then brought this action, asserting federal civil rights and state law tort claims against the individual defendants and the City of New York ("City").

Kee's claims center around Detective Anzalone's contention that he saw Kee and another individual in a car smoking marijuana as the car was being driven on local streets. According to Detective Anzalone, a few minutes after he had observed Kee smoking in the car, he saw Kee standing on the sidewalk next to the same car and, upon searching the vehicle, observed heroin, cocaine, and a lit and burning marijuana cigarette inside the car. Based upon these reported observations, Kee was arrested and charged with possession of the narcotics and marijuana found in the car. Kee, however, denies that he was ever in that car at any point during the entire day, and that he was ever smoking marijuana in or

3

near the car.  Kee further claims that Detective Anzalone lied by stating that he found Kee's cell phone in the car, when the phone was recovered during a search of his person.  Kee asserts that this evidence that was fabricated by Detective Anzalone (and approved by Lieutenant Ryan) was the basis for his arrest and prosecution on narcotics and marijuana charges.

By judgment dated June 11, 2020, the United States District Court for the Eastern District of New York (Matsumoto, *J.*), *inter alia*, dismissed Kee's claims under 42 U.S.C. § 1983 ("Section 1983") for false arrest, malicious prosecution, and denial of a right to a fair trial against the individual defendants, as well as Kee's state law malicious prosecution claims against the City, Detective Anzalone, and Lieutenant Ryan (collectively, "defendants").

We conclude that the district court properly granted summary judgment on Kee's Section 1983 false arrest claim because, regardless of the drug-related charges, probable cause existed for his arrest on the charge of loitering for the purpose of gambling.  With respect to the federal malicious prosecution claim, we hold that the district court erred in concluding that the dismissal of Kee's underlying narcotics charges on speedy trial grounds could not satisfy the "favorable termination" element for that claim.  We also find that the record

4

evidence raises disputed issues of material fact that preclude summary judgment on the issue of probable cause for the federal and state malicious prosecution claims, and that the district court's dismissal of these claims on summary judgment against the City and Detective Anzalone was unwarranted. Similarly, we conclude that there was sufficient evidence to overcome summary judgment on the fair trial claim based upon allegedly fabricated evidence conveyed to the prosecutors.[1]

Accordingly, we VACATE the district court's dismissal of Kee's malicious prosecution claims against Detective Anzalone and the City and his fair trial claim against the individual defendants, we AFFIRM the district court's grant of summary judgment in all other respects, and we REMAND the case to the district court for further proceedings consistent with this opinion.

---

[1] Although the district court denied defendants' motion for summary judgment on Kee's Section 1983 excessive force claim against Detective Anzalone, Kee voluntarily dismissed that claim with prejudice in order to pursue this appeal. Additionally, the district court granted defendants' motion for summary judgment on Kee's Section 1983 failure to intervene claim against Lieutenant Ryan, but Kee does not challenge that ruling on appeal. Furthermore, as discussed *infra*, Kee has abandoned any challenge to the dismissal of his malicious prosecution claims against Lieutenant Ryan by failing to brief on appeal whether the district court erred in concluding that Kee did not establish the initiation element as to Ryan.

## I.     BACKGROUND

### A. Factual Background

This civil rights action arises from Tito Kee's arrest in Staten Island, New York, on New Year's Eve 2015. The following facts are drawn from the record on appeal and are construed in the light most favorable to Kee, as the non-moving party. *See Lucente v. County of Suffolk*, 980 F.3d 284, 296 (2d Cir. 2020). We note, however, that the parties offer divergent versions of what transpired in connection with Kee's arrest, as outlined in their deposition testimony and other evidence in the record; because some of these differences bear on our legal analysis, we discuss the differing accounts of the facts when necessary.

On December 31, 2015, sometime after 7:00 p.m., NYPD Detective Anzalone and NYPD Lieutenant Ryan were on an anti-crime assignment in an unmarked vehicle in Staten Island, New York, with Anzalone driving and Ryan seated in the passenger seat.[2]

According to defendants, while driving the unmarked police vehicle on Henderson Avenue with the windows down, Detective Anzalone saw what he believed to be marijuana smoke emanating from a four-door sedan traveling in the

[2] Another NYPD officer, a non-party to this action, was in the vehicle on duty with Detective Anzalone and Lieutenant Ryan.

opposite direction. Detective Anzalone also smelled marijuana smoke coming from the sedan and believed he saw one of the occupants of the sedan smoking a marijuana cigarette; he relayed these observations to Lieutenant Ryan. When Detective Anzalone was less than a car length from the approaching sedan, he identified the occupants as two males. And when Detective Anzalone passed the sedan, he identified Kee sitting in the passenger seat. Detective Anzalone was able to recognize Kee because he had previously arrested him on two other occasions. Upon passing the sedan, Detective Anzalone continued to drive for a few moments and then made a U-turn and attempted to follow the car. At some point during this process, Detective Anzalone and Lieutenant Ryan lost sight of the sedan, but only for "[a] few seconds," and they soon after discovered the sedan parked in front of 705 Henderson Avenue, which is a liquor store. Joint App'x at 239. Neither Detective Anzalone nor Lieutenant Ryan observed the sedan parking in that location. Detective Anzalone pulled up and parked next to the unoccupied sedan. When Detective Anzalone and Lieutenant Ryan found the sedan, Kee was standing next to the car on the sidewalk.[3]

---

[3] Detective Anzalone testified that Kee was "[r]ight outside" or "2 feet" from the sedan, Joint App'x at 240–41, but Kee testified that he was at least a car's length away from the sedan when the police arrived at the liquor store.

7

Although Kee admits that he was standing in front of 705 Henderson Avenue, he vigorously denies that he was ever in that sedan earlier that day. Instead, according to Kee, he was at the residence of his girlfriend's mother from approximately 12:00 p.m. until later in the evening, when he left that residence to meet a friend who lived nearby. He then walked to the liquor store located at 705 Henderson Avenue and saw his friend "Larry" as he arrived. The two began "rolling dice" for money on the sidewalk outside of the store. Joint App'x at 149. After Kee and Larry had been rolling dice for about two minutes, Detective Anzalone and Lieutenant Ryan arrived in their vehicle.

The parties agree that, when Detective Anzalone walked up to Kee and searched his person, Anzalone recovered over $2,000 in U.S. currency but found no contraband. Larry, Kee's friend, was also searched, and was later released from the scene without being arrested.

Raymond Tavares, the owner of the sedan, testified that he came outside from a residence he was visiting at 704 Henderson Avenue and found police surrounding and inside his car, the doors to which had been unlocked.[4] At this

---

[4] Detective Anzalone testified that Tavares was in an alleyway across the street, not a residence.

point, Tavares identified himself as the owner of the sedan to the police. Detective Anzalone then searched the sedan. According to Detective Anzalone, during the search, he observed and recovered ten decks of heroin and twelve zips of cocaine in the center console, as well as one lit and burning marijuana cigarette from the ashtray in the center console, all of which were subsequently vouchered.[5]

Upon the discovery of the drugs in Tavares's car, Detective Anzalone approached Kee and advised him that they had found drugs in the car and, according to Kee, Anzalone said, "[Y]ou're finished." Joint App'x at 156. Kee testified that he responded, "You seen what I was out here doing. I was rolling dice. If you're going to lock me up for anything, you should lock me up for what I'm doing, not what I'm not doing." Joint App'x at 156–57.

The police arrested Kee and Tavares and charged them both with various drug-related offenses. Defendants also contend that Detective Anzalone observed and recovered Kee's cell phone from the passenger side of Tavares's sedan.[6] Kee

---

[5] Detective Anzalone testified that he did not ask for consent to search the sedan, but rather believed that he could search the sedan because he "observed them committing a crime in the vehicle"—namely, smoking marijuana. Joint App'x at 245–46.

[6] Detective Anzalone testified that, because Kee did not want to leave his phone behind in Tavares's car, he (Kee) told Anzalone that the phone was in the sedan. Additionally, Lieutenant Ryan testified that he overheard Kee tell a passerby to get his phone from the car.

denies that his cell phone was recovered from Tavares's sedan, and testified that the police took the phone from his pocket. Moreover, Kee denies leaving anything in, or ever being in, Tavares's sedan on December 31, 2015. Kee alleges that the first time he saw Tavares on December 31, 2015, was when Tavares appeared and identified himself as the owner of the sedan to the police.

Tavares, for his part, testified in his deposition that (1) he had parked his sedan in front of 705 Henderson Avenue at least one to two hours prior to the arrest, (2) nobody else was with him and nobody had used his sedan that day, (3) he had not been smoking marijuana in the car, and (4) the drugs found in the car did not belong to him.

After his arrest, Kee was transported to the 120th Precinct, and Detective Anzalone drafted arrest paperwork, which he then forwarded to the Richmond County District Attorney's office ("RCDA").[7] The arrest reports indicated that Kee and Tavares "were observed smoking a lit marijuana cigarette in vehicle." Joint App'x at 66, 69. The RCDA data analysis sheet indicated that the officers

---

[7] Detective Anzalone also appeared to acknowledge at this deposition that he orally conveyed at least some of his observations to the RCDA. *See, e.g.*, Joint App'x at 260 (Detective Anzalone testifying that he informed the RCDA of a particular observation regarding Kee but "didn't type it" in his reports).

(including Detective Anzalone) observed Kee and Tavares inside the sedan "windows down" and "marijuana smoke coming from open windows." Joint App'x at 121. The sheet also noted that one cell phone was found on Tavares, and two additional cell phones were recovered from the car.[8]

On January 1, 2016, the RCDA drafted a criminal complaint based on Detective Anzalone's statements—and Anzalone signed the complaint—charging Kee with two counts of Criminal Possession of a Controlled Substance in the Third Degree, in violation of New York Penal Law § 220.16(1) (class B felony); two counts of Criminal Possession of a Controlled Substance in the Seventh Degree, in violation of New York Penal Law § 220.03 (class A misdemeanor); and one count of Criminal Possession of Marijuana in the Fifth Degree, in violation of New York Penal Law § 221.10(1) (class B misdemeanor). Kee was arraigned on January 2, 2016; he was unable to post bail. He was then transported to Rikers Island, where he remained in custody until his release on January 7, 2016. During a court appearance on July 13, 2016, Kee moved to dismiss the case on speedy trial grounds. *See* N.Y. Crim. P. Law § 30.30. The state did not oppose the motion, and Kee's criminal case was dismissed.

---

[8] Evidence vouchers suggested that two of the three cell phones belonged to Kee.

## B. Procedural History

Following the dismissal of their criminal charges, Kee and Tavares commenced this civil rights action on September 6, 2017, asserting causes of action against defendants under Section 1983 and state law for, *inter alia*, false arrest, malicious prosecution, and denial of a right to a fair trial. On January 31, 2019, defendants moved for summary judgment on all of plaintiffs' claims. On April 6, 2020, the district court issued a Memorandum and Order granting defendants' motion for summary judgment and dismissing all of Kee's claims relevant to this appeal.[9] Kee timely appealed.

## II. DISCUSSION

## A. Standard of Review

We review a district court's grant of summary judgment *de novo*. *Jaffer v. Hirji*, 887 F.3d 111, 114 (2d Cir. 2018). In doing so, "we must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Lucente*, 980 F.3d at 296 (internal quotation marks omitted). Summary judgment is appropriate only when

---

[9] As noted *supra*, even though the district court denied defendants' motion for summary judgment on Kee's Section 1983 claim against Detective Anzalone for excessive force, Kee voluntarily dismissed that claim with prejudice to pursue this appeal. All of Tavares's claims were dismissed by the district court, and he did not appeal.

"the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "where the evidence is such that a reasonable jury could decide in the non-movant's favor." *Beyer v. County of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008). Thus, "[s]ummary judgment dismissing a claim is inappropriate when the admissible materials in the record make it arguable that the claim has merit." *Lucente*, 980 F.3d at 296 (internal quotation marks omitted).

## B.    False Arrest

Kee challenges the district court's dismissal of his Section 1983 claim against Detective Anzalone and Lieutenant Ryan for false arrest. The district court granted summary judgment to Detective Anzalone and Lieutenant Ryan on the false arrest claim on the ground that the individual defendants had probable cause to arrest Kee for a gambling offense because Kee "admitted to illegally gambling on a public sidewalk." Special App'x at 13. On appeal, Kee argues that the district court erred in finding probable cause existed to arrest Kee for a gambling offense. Specifically, Kee asserts that no evidence in the record establishes that, at the time of his arrest, the officers were aware that he had been gambling for money. Kee also argues that, under New York law, loitering for the purpose of gambling is a

13

violation, *see* N.Y. Penal Law § 240.35(2), not a crime, and thus the officers must have observed Kee in the act of gambling in order to have had probable cause to effectuate his arrest. As set forth below, we agree with the district court that the uncontroverted evidence in the record establishes probable cause to arrest Kee for loitering for the purpose of gambling in violation of Section 240.35(2).

"A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures . . . is substantially the same as a claim for false arrest under New York law." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (internal citations omitted); *accord Jaegly v. Couch*, 439 F.3d 149, 151–52 (2d Cir. 2006). "Under New York law, to prevail on a claim for false arrest, a plaintiff must show that (1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Ashley v. City of New York*, 992 F.3d 128, 136 (2d Cir. 2021) (alteration in original, internal quotation marks omitted). Probable cause to arrest is a complete defense to a false arrest claim. *See, e.g., id.* "An officer has probable cause to arrest when he or she has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the

person to be arrested has committed or is committing a crime." *Jaegly*, 439 F.3d at 152 (internal quotation marks omitted). To assess probable cause, a court considers only the facts "available to the officer at the time of the arrest and immediately before it." *Ashley*, 992 F.3d at 136 (internal quotation marks omitted).

Additionally, "when faced with a claim for false arrest, we focus on the validity of the arrest, and not on the validity of each charge." *Jaegly*, 439 F.3d at 154 (emphasis omitted). In other words, a police officer is not liable for a false arrest under Section 1983 if probable cause to arrest the plaintiff existed "for *any* crime—whether or not that particular crime was closely related to the offense the officers said was the reason for arrest." *Berg v. Kelly*, 897 F.3d 99, 111 (2d Cir. 2018). Here, defendants argue that, even if Kee's sworn denials related to the drug offenses create disputed issues of fact as to the issue of probable cause on the drug charges, Kee "admitted to other facts at the arrest scene that, together with further undisputed facts, yielded probable cause for a separate gambling-related offense," namely, loitering for the purpose of gambling. Appellees' Br. at 15.

In relevant part, under New York Penal Law § 240.35(2), "[a] person is guilty of loitering when he . . . [l]oiters or remains in a public place for the purpose of gambling with cards, dice or other gambling paraphernalia." Under New York

Penal Law § 225.00(2), "[a] person engages in gambling when he stakes or risks something of value upon the outcome of a contest of chance or a future contingent event not under his control or influence, upon an agreement or understanding that he will receive something of value in the event of a certain outcome."  As one New York court explained, "[t]o break it down to its simplest terms, in New York State it is a violation for people to roll dice for money even if they are only players, if they do so in a public place." *People v. Greenhill*, 94 N.Y.S.3d 539, 2017 WL 6601862, at *3 (N.Y. Crim. Ct. Dec. 26, 2017).

It is also important to note that loitering for the purpose of gambling is a *violation* under New York Law; it is not a *crime*.  N.Y. Penal Law § 240.35; *compare id.* § 10.00(3) ("'Violation' means an offense, other than a 'traffic infraction,' for which a sentence to a term of imprisonment in excess of fifteen days cannot be imposed."), *with id.* § 10.00(6) ("'Crime' means a misdemeanor or a felony."). Pursuant to New York law, because loitering for the purpose of gambling is only a violation, the offense must occur in the officer's presence to provide probable cause to arrest.  *See* N.Y. Crim. Proc. Law § 140.10(1) (explaining that a police officer may arrest a person *for a crime* when the officer has "reasonable cause to believe that such person has committed such crime, *whether in [the officer's] presence*

*or otherwise*," but that an officer may arrest a person *for a violation* only when the officer has "reasonable cause to believe that such person has committed such offense *in his or her presence*" (emphases added)); *see also People v. Johnson*, 66 N.Y.2d 398, 402 n.2 (N.Y. 1985) (explaining that "reasonable cause" as used in N.Y. Crim. Proc. Law § 140.10(1) is equivalent to "probable cause.").

Here, it is undisputed that, when Detective Anzalone and Lieutenant Ryan approached Kee, he was in front of the liquor store at 705 Henderson Avenue playing dice for money with his friend Larry, thereby violating Section 240.35(2). Kee, however, disputes whether the officers observed this conduct. In particular, although Kee does not challenge that the officers did observe either Kee or his friend with dice in his hand,[10] Kee asserts that Detective Anzalone and Lieutenant Ryan did *not* see Kee playing dice with Larry *for money*, which is required to be guilty of a violation for such activity under New York law. *See* Appellant's Br. at 24 ("While Anzalone and Ryan were aware that Larry had dice, there was no

---

[10] Lieutenant Ryan recalled, at the time he and Detective Anzalone first observed Kee in front of the liquor store, either Kee or his friend were holding dice in their hand. Detective Anzalone testified that, when he encountered Kee on the sidewalk, he believed Kee had dice in this hand, but he was not sure. In any event, Kee confirmed in his deposition that the officers saw the dice. Thus, Kee concedes this fact. *See* Appellant's Br. at 25 ("Viewed in the light most favorable to Kee, the evidence was that the Officers were aware . . . Kee or the person he was with were in possession of dice.").

objective evidence of gambling."). That argument, however, is unpersuasive given Kee's accompanying statement to Detective Anzalone during their encounter, that he was "rolling dice," and that, "[i]f you're going to lock me up for anything, you should lock me up for what I'm doing, not what I'm not doing." Joint App'x at 156–57. From this statement, a police officer "of reasonable caution" could reasonably infer that Kee was illegally gambling with Larry when the police first encountered Kee in front of the liquor store. *Jaegly*, 439 F.3d at 152. As the Supreme Court has frequently emphasized, probable cause to arrest does not require certainty, "only a probability or substantial chance of criminal activity." *District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018) (internal quotation marks omitted). When Kee admitted that he was "rolling dice" and suggested that he should be arrested for that activity (and not a drug offense), Joint App'x at 156–57, there was certainly a "probability or substantial chance" that he was on the public sidewalk for the purpose of rolling dice for money, thus establishing probable cause to arrest him for a violation of New York Penal Law § 240.35(2).[11] *Wesby*, 138 S. Ct. at 586.

---

[11] Defendants also argue that the Court should consider "Kee's undisputed possession of $2,000 in cash" in determining whether he was engaged in gambling for money. Appellees' Br. at 15. Kee's deposition testimony does seem to suggest that the $2,000 was found by the officers on his person before the search of the car and his arrest on narcotics

18

Kee attempts to discount his incriminating statement by contending that, although he admitted at his deposition to making the statement to Detective Anzalone, there is no evidence in the record to establish that the police officers ever *heard* his statement, and thus the defense cannot rely on the statement to demonstrate probable cause existed for the arrest. This argument is unavailing. As an initial matter, we note that the officers were never asked at their deposition whether they heard Kee's statement. Moreover, there is nothing in the record about the circumstances to suggest that Detective Anzalone or Lieutenant Ryan did *not* hear Kee tell Anzalone that he was "rolling dice" and that "[Anzalone] should lock [him] up for [that]." Joint App'x at 156–57. To the contrary, according to Kee, he made this incriminating statement during a heated conversation with Detective Anzalone. In particular, Kee confirmed in his deposition that, during this encounter with Detective Anzalone, he was "mad" and "[s]creaming." Joint

---

charges. *See* Joint App'x at 151 ("They [*i.e.,* the officers] get out of the car, and they see me and he comes right to me, comes right to me and starts searching."). However, Detective Anzalone did not testify as to the timing of the search of Kee's person, and Lieutenant Ryan's testimony was less clear as to whether the search occurred before or after Kee's arrest. *See id*. at 294 (Lieutenant Ryan testifying that he did not recall the timing of the search of Kee's person in relation to the decision to arrest). Therefore, we have not considered this additional fact as part of our analysis and, nevertheless, find that there was probable cause, as the district court did, based upon other uncontroverted evidence.

19

App'x at 158.  Given these uncontroverted facts, any attempt to argue that the officers did not hear Kee's admission would be pure speculation that is wholly unsupported by any rational inference from the record.  Thus, the district court properly relied upon Kee's admission to Detective Anzalone in concluding that probable cause existed for the gambling-related offense.

Finally, Kee argues that Detective Anzalone and Lieutenant Ryan could not have had probable cause to arrest him for loitering for the purpose of gambling because the offense did not occur in the officers' presence, as required under New York law.  That contention, however, misstates the record and is similarly unpersuasive.  As noted above, Kee concedes he was playing dice with his friend Larry when the officers approached him, and even admitted to that fact during his interaction with Detective Anzalone.  Our analysis on this issue can end there; the temporal requirement imposed by New York law on police officers effectuating an arrest for a violation—requiring that the violation be committed in the officer's presence—was met.  *See* N.Y. Crim. Proc. Law § 140.10(1)(a).

The officers need not have seen Kee actually rolling the dice on the ground to satisfy this requirement; rather, their observation of the dice in the hand of Kee or his friend, combined with Kee's statement to Detective Anzalone to "lock [him]

up" for "rolling dice," Joint App'x at 156–57, were sufficient to provide the officers with probable cause to believe that Kee was engaged in gambling for money with Larry when they approached the men in front of the liquor store. *See, e.g., People v. Bothwell*, 261 A.D.2d 232, 234–35 (1st Dep't 1999) (holding that probable cause existed to arrest the defendant for possessing an open container holding an alcoholic beverage in a public place with intent to consume it—a violation of the City's Administrative Code—even though the officer had not seen the defendant drinking from the beer bottle in his hand, because "[e]ven if the bottle were empty, it was reasonable to infer that the defendant had just finished consuming it"); *see also People v. Lewis*, 50 A.D.3d 595, 595 (1st Dep't 2008) (finding statement that "I got tickets, Billy Joel tickets" provided probable cause for arrest on the violation of offering to sell tickets within 1,500 feet of entertainment venue).

In sum, although Kee was not charged with loitering for the purpose of gambling, the uncontroverted facts established probable cause for Detective Anzalone and Lieutenant Ryan to arrest Kee for that violation of New York Penal Law § 240.35(2).[12] *See Ashley*, 992 F.3d at 136; *Berg*, 897 F.3d at 111. The district

---

[12] The individual defendants also argued, in the alternative, that they had arguable probable cause to arrest and, therefore, are entitled to qualified immunity. Given the existence of probable cause, we need not address this alternative argument.

court therefore did not err in granting summary judgment to the individual defendants on the Section 1983 false arrest claim.

## C.    Malicious Prosecution

Kee also challenges the district court's grant of summary judgment to the individual defendants on his Section 1983 malicious prosecution claim and to all defendants on Kee's state law malicious prosecution claim. The district court concluded that these claims fail because (i) dismissal of Kee's underlying criminal charges on speedy trial grounds is not a favorable termination under federal law, and (ii) defendants had probable cause to prosecute Kee for the narcotics offenses. We agree with Kee that the district court erred in dismissing his malicious prosecution claims against the City and Detective Anzalone on these grounds on summary judgment.

To prevail on a malicious prosecution claim under New York law and federal law, a plaintiff must show: "(1) the commencement or continuation of a criminal proceeding by the defendant against the plaintiff, (2) the termination of the proceeding in favor of the accused, (3) the absence of probable cause for the criminal proceeding and (4) actual malice." *Smith-Hunter v. Harvey*, 734 N.E.2d 750, 752 (N.Y. 2000) (internal quotation marks omitted); *accord Murphy v. Lynn*, 118

F.3d 938, 947 (2d Cir. 1997). For a malicious prosecution claim under Section 1983, a plaintiff also must demonstrate a "sufficient post-arraignment liberty restraint." *Rohman v. N.Y.C. Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000).

As an initial matter, for both his state and federal claims, Kee does not challenge the district court's holding that he failed to establish the initiation element of malicious prosecution for Lieutenant Ryan. Even after defendants highlighted this omission in their brief to us, Kee, in his reply brief, did not address the district court's initiation-element conclusion as it pertained to Lieutenant Ryan. Kee has therefore abandoned any challenge to the district court's judgment in favor of Lieutenant Ryan on the state and federal malicious prosecution claims, and the judgment is affirmed. *See, e.g.*, *Doe v. Trump Corp.*, 6 F.4th 400, 2021 WL 3176760, at *7 n.6 (2d Cir. 2021). Therefore, on appeal, only two elements— pertinent to both Kee's federal malicious prosecution claim against Detective Anzalone and corresponding state claim as to Anzalone and the City—are at issue.

### 1. Favorable Termination

As noted above, under Section 1983 and New York law, a plaintiff seeking to prevail on a tort claim for malicious prosecution must prove that the underlying criminal proceeding against the plaintiff terminated "in favor of the accused [*i.e.*,

23

the plaintiff]." *Smith-Hunter*, 734 N.E.2d at 752; *see, e.g., Murphy*, 118 F.3d at 947.

In this case, the district court did not analyze whether Kee's state law malicious prosecution claim against the defendants failed under the favorable termination element. Instead, the district court disposed of the state law claim on probable cause grounds. On appeal, the defendants do not dispute that the dismissal of Kee's criminal prosecution on speedy trial grounds is a favorable termination under state law in the context of his state tort claim for malicious prosecution. We agree and reiterate that, under New York State law, dismissal of a criminal prosecution on speedy trial grounds, *see* N.Y. Crim. Proc. Law § 30.30, is generally a favorable termination for the purpose of a New York tort claim for malicious prosecution. *See Smith-Hunter*, 734 N.E.2d at 755 (explaining that, as a "general rule[,] . . . a dismissal on speedy trial grounds is a favorable termination").

The dispute on appeal as to this element is whether, as a matter of *federal* law, a speedy trial dismissal satisfies the favorable termination element for purposes of a malicious prosecution claim brought under Section 1983. Kee challenges the district court's determination that, under federal law, a dismissal on speedy trial grounds does not qualify as a favorable termination. Specifically, he asserts that under general principles of traditional common law, and following

24

the precedent of our Circuit, speedy trial dismissals are favorable. In contrast, defendants assert that the district court correctly granted them summary judgment on Kee's Section 1983 malicious prosecution claim because, under federal law, a plaintiff must show that the underlying prosecution terminated in a manner indicating innocence and that the dismissal of Kee's prosecution on speedy trial grounds is merely "neutral as to innocence and equally consistent with guilt." Appellees' Br. at 25. The district court, as well as defendants, support their analysis by relying upon our decision in *Lanning v. City of Glens Falls*, 908 F.3d 19 (2d Cir. 2018).

As discussed below and in *Lanning*, New York state tort law has diverged from traditional common law with respect to what qualifies as a favorable termination. This divergence has unfortunately been the source of some confusion in Section 1983 litigation, and district courts in the Circuit have reached different conclusions regarding the impact of our decision in *Lanning* on the question of whether a speedy trial dismissal is a favorable termination in the context of a federal malicious prosecution claim. *Compare Blount v. City of New York*, 15-CV-5599 (PKC) (JO), 2019 WL 1050994, at *5 (E.D.N.Y. Mar. 5, 2019) ("*Lanning* makes clear that, as the Circuit consistently held pre-*Lanning*, dismissals on speedy trial

25

grounds are terminations in the favor of the accused."), *with Minus v. City of New York*, 488 F. Supp. 3d 58, 66 (S.D.N.Y. 2020) (concluding, after reviewing *Lanning* and prior case authority, that "a speedy trial dismissal is not a favorable termination for purposes of a Section 1983 claim without an affirmative indication of the accused's innocence"); *see generally Herrera-Amador v. N.Y.C. Police Dep't*, 16-CV-5915 (NGG) (VMS), 2021 WL 3012583, at *4 (E.D.N.Y. July 16, 2021) (collecting cases).

We now clarify that *Lanning* did not modify, but rather re-affirmed, the longstanding "indicative of innocence" standard for Section 1983 malicious prosecution claims under which this Court has repeatedly held, and holds again today, that a speedy trial dismissal generally constitutes a "favorable termination."

In *Murphy v. Lynn*, citing both common law (as reflected in the Restatement (Second) of Torts (Am. Law Inst. 1977) ("Restatement")) and New York law, we made clear that "[w]here the prosecution did not result in an acquittal, it is deemed to have ended in favor of the accused, for these purposes, only when its final disposition is such as to indicate the innocence of the accused." 118 F.3d at 948. Applying that "indicative of innocence" standard, we held that "dismissals for

lack of timely prosecution should generally be considered, for purposes of a claim

of malicious prosecution, a termination favorable to the accused." *Id.* at 950. In

reaching this decision, we explained that "[p]art of the rationale for viewing a

dismissal for the prosecution's failure to prosecute in a timely fashion as favorable

to the accused is that the failure to proceed to the merits compels an inference of

such an unwillingness or inability to do so as to imply a lack of reasonable grounds

for the prosecution." *Id.* at 949 (internal quotation marks omitted). We further

reasoned that "to view a dismissal for failure to prosecute within the time allowed

as a termination not favorable to the accused would have the effect of unfairly

compelling one charged with a criminal offense to waive his constitutional or

statutory right to a speedy trial in order to preserve his right to civil retribution for

a demonstrated wrong." *Id.* at 949–50 (alterations and internal quotation marks

omitted). We also noted that our decision was not only consistent with New York

law and the Restatement, but with the decisions of numerous other states. *Id.* at

950 (collecting cases).

We reiterated *Murphy*'s holding in several subsequent decisions. *See, e.g.,*

*Posr v. Ct. Off. Shield No. 207*, 180 F.3d 409, 418 (2d Cir. 1999) ("Under the law and

logic of *Murphy*, [plaintiff] cannot be required to waive his right to dismissal on

27

speedy trial grounds in order to preserve the possibility of bringing a malicious prosecution suit. Accordingly, the district court erred in its determination that [plaintiff] failed to plead favorable termination [based on a speedy trial dismissal].”); *see also Fulton v. Robinson*, 289 F.3d 188, 196 (2d Cir. 2002) (explaining that, in *Murphy*, we “ruled that the state’s effective abandonment of a prosecution, which resulted in a dismissal for violation of the accused’s speedy trial rights, without an adjudication of his guilt or innocence, constituted a favorable termination”).

Our recent decision in *Lanning* did not overrule or modify this well-settled precedent articulated in *Murphy* and subsequent cases. In *Lanning*, which did not involve a dismissal of charges based upon a speedy trial violation, we addressed the potential impact of the expansion under New York law of the definition of a “favorable termination” on federal malicious prosecution claims. More specifically, we discussed how, up until the early 2000s, “New York courts adhered to . . . traditional common law principles relating to the favorable termination element of a claim of malicious prosecution.” *Lanning*, 908 F.3d at 27. Pursuant to “traditional common law principles,” *id.* at 26, “[p]roceedings are terminated in favor of the accused . . . only when their final disposition is such as

28

to *indicate the innocence of the accused*," Restatement § 660 cmt. a (emphasis added).

However, in the early 2000s, the New York Court of Appeals broadened the definition of favorable termination, departing from the traditional common law. *Lanning* summarized this change in a clear and concise manner:

> In 2000 . . . the New York Court of Appeals, in *Smith-Hunter v. Harvey* (a case involving dismissal for violation of the defendant's right to a speedy trial), . . . rejected the notion that a plaintiff asserting a [s]tate tort claim for malicious prosecution, at least under the particular circumstances presented in that case, must demonstrate innocence in order to satisfy the favorable termination prong. In 2001, in *Cantalino v. Danner*, [754 N.E.2d 164 (N.Y. 2001)], the Court of Appeals appeared to go further. In *Cantalino*, the Court of Appeals characterized *Smith-Hunter* as holding that any termination of a criminal prosecution, such that the criminal charges may not be brought again, qualifies as a favorable termination, so long as the circumstances surrounding the termination are not inconsistent with the innocence of the accused. The rule announced in *Smith-Hunter*, the Court of Appeals explained, is one of general application. . . . [Thus], *Cantalino* appeared to deviate (as State courts are entitled to do with regard to claims under State law) from the traditional common law of torts, which, as reflected in the Restatement, requires that a favorable termination affirmatively indicate the innocence of the accused.

*Lanning*, 908 F.3d at 27–28 (internal alterations, citations, quotation marks and footnotes omitted).

Notwithstanding this broadening of the "favorable termination" definition under New York law, which must be applied for purposes of a state malicious

29

prosecution claim, we clarified in *Lanning* that "federal law defines the elements of a § 1983 malicious prosecution claim, and that a State's tort law serves only as a source of persuasive authority rather than binding precedent in defining these elements." *Id.* at 25. In other words, we concluded that "we are not bound to apply New York law to malicious prosecution claims arising under § 1983." *Id.* at 28. Instead, we continued to apply the common law standard—namely, that a termination affirmatively indicates innocence—that had been articulated in *Murphy* and numerous other decisions prior to *Lanning*. Thus, "regardless of developments in New York State malicious prosecution law," we reiterated that "[o]ur prior decisions requiring affirmative indications of innocence to establish 'favorable termination' . . . continue to govern § 1983 malicious prosecution claims." *Id.* at 25. We then held, under that standard, that the dismissal of plaintiff's charges without specification as to how, or on what grounds, the charges were dismissed, was not indicative of innocence and did not qualify as a "favorable termination" for the purpose of a Section 1983 malicious prosecution claim. *Id.* at 29.

Not only did we continue in *Lanning* to apply the same "indicative of innocence" test—used in *Murphy* to find a speedy trial dismissal to be a favorable

30

termination—but we also explicitly noted in *Lanning* that our holding did nothing to change the calculus of our favorable termination analysis for dismissals on speedy trial grounds. More specifically, we were careful to underscore, in footnote six of *Lanning*, that a dismissal on speedy trial grounds is a favorable termination "still reflect[ing] the traditional common law." *See id.* at 27 n.6 (citing Restatement § 660 cmt. d and *Murphy*, 118 F.3d at 949–50). This is because, even though a speedy trial dismissal is, in practice, neutral with respect to guilt or innocence, such neutrality inures, as a matter of law, to the benefit of the plaintiff because "claims of constitutional or other privilege" are at issue.[13] Restatement § 660 cmt. d; *see also Murphy*, 118 F.3d at 949 ("An abandonment brought about by the accused's *assertion of a constitutional or other privilege . . . such as the right to a speedy trial*, does not fall within . . . categories [of abandonment of prosecution that are facially neutral but are not considered favorable terminations]." (emphasis added)).

---

[13] The right of a criminal defendant to a speedy trial is enshrined in the United States Constitution. *See* U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial."); s*ee also Klopfer v. State of North Carolina*, 386 U.S. 213, 226 (1967) (holding that the right to a speedy trial secured by the Sixth Amendment "is one of the most basic rights preserved by our Constitution" and applying that right to the states through the Fourteenth Amendment). Additionally, in New York, the right to a speedy trial is guaranteed by statute. *See* N.Y. Crim. Proc. Law § 30.20; N.Y. Civil Rights Law § 12; *see also People v. Romeo*, 12 N.Y.3d 51, 55 (N.Y. 2009).

Therefore, we again hold that *Murphy* is good law and binding precedent—namely, a speedy trial dismissal is generally a favorable termination for purposes of a malicious prosecution claim under Section 1983. In clarifying that a dismissal on speedy trial grounds is *generally* a favorable termination, we note the qualifier. Although such dismissals are generally (or presumed to be) favorable, the defendant may attempt to present evidence to rebut this presumption. Thus, as explained in *Murphy*, a plaintiff will prevail on this "favorable termination" element as a matter of law when there was a speedy trial dismissal unless the defendant produces evidence of a "non-merits-based explanation for the failure to pursue the prosecution" of the plaintiff. 118 F.3d at 951.

In the instant case, it is undisputed that Kee's dismissal was on speedy trial grounds.[14] Moreover, there was no evidence in the record of a non-merits-based explanation for the dismissal. Although defendants assert that the state offered Kee a plea deal on July 13, 2016, and thus, by their logic, the offer indicates that

---

[14] Kee was charged with two counts of a B felony—criminal possession of a controlled substance in the third degree, in violation of N.Y. Penal Law § 220.16(1)—and thus if the state was not "ready for trial . . . within six months of the commencement of [the] criminal action," Kee's motion to dismiss on speedy trial grounds "must be granted." N.Y. Crim. Proc. Law § 30.30(1)(a). Kee was arraigned January 2, 2016, and he moved to dismiss the case on speedy trial grounds on July 13, 2016—more than six months after the commencement of the criminal action—and the state did not oppose.

the state was not abandoning Kee's prosecution for any merits-based reason, we find this argument unpersuasive. First, the plea offer came *after* the speedy trial clock had run. Second, the plea offer was not to the pending felony charge, but rather to a violation and a conditional discharge. Put simply, a non-merits-based explanation for the dismissal of the felony charges cannot be rationally inferred from the mere fact that a prosecutor made an offer to the defendant to plead to a violation and conditional discharge after the speedy trial clock had run. Under these circumstances, that offer to plead guilty to the lesser offense can carry no weight on this issue. Thus, because dismissal of Kee's charges on speedy trial grounds is generally (or presumptively) a favorable termination and there is no evidence in the record to support a non-merits-based reason for the dismissal, the district court erred in concluding Kee had failed to satisfy this element on his federal malicious prosecution claim.

### 2. Probable Cause to Prosecute

Kee also challenges on appeal the district court's conclusion that the defendants acted with probable cause to prosecute Kee for the state drug charges. Specifically, Kee argues that the district court erred in finding that the defendants' version of events was "undisputed." We agree and conclude that, in light of the

disputed facts, the probable cause issue in this case cannot be decided on summary judgment.[15]

As discussed above, malicious prosecution claims under both New York and federal law require that a plaintiff prove the defendant lacked probable cause to prosecute. *See Murphy*, 118 F.3d at 947; *Smith-Hunter*, 734 N.E.2d at 752. "Probable cause, in the context of malicious prosecution, has . . . been described as such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty." *Boyd v. City of New York*, 336 F.3d 72, 76 (2d Cir. 2003). Although probable cause to prosecute is a complete defense to a claim of malicious prosecution, *see Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003), such probable cause must be shown as to each crime charged in the underlying criminal action, *see Posr v. Doherty*, 944 F.2d 91, 100 (2d Cir. 1991); *Lowth v. Town of*

---

[15] As an initial matter, we note that the defendants, in their brief, did not raise any argument one way or the other regarding the issue of probable cause to prosecute Kee for the narcotics offenses. Defendants, however, noted during oral argument that they do not concede that the district court erred in its probable-cause-to-prosecute determination. In any event, notwithstanding the defendants' failure to brief the issue on appeal, we have fully analyzed the issue and conclude that disputed issues of fact preclude summary judgment on the probable cause element.

*Cheektowaga*, 82 F.3d 563, 571 (2d Cir. 1996). Thus, probable cause to prosecute should not be conflated with probable cause to arrest. *See Posr*, 180 F.3d at 417.

With respect to the evidence, at the summary judgment stage, the district court is not permitted to make credibility determinations or weigh the evidence on the probable cause element or any other element, for these are "jury functions, not those of a judge." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *accord Rogoz v. City of Hartford*, 796 F.3d 236, 245 (2d Cir. 2015). "The function of the district court in considering the motion for summary judgment is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010). "Summary judgment is inappropriate when the admissible materials in the record make it arguable that the claim has merit, for the court in considering such a motion must disregard all evidence favorable to the moving party that the jury is not required to believe." *Rogoz*, 796 F.3d at 246 (internal emphasis, citations, and quotation marks omitted); *accord Lucente*, 980 F.3d at 296.

Here, there are disputed factual issues in the record that preclude summary judgment on the issue of whether there was probable cause to prosecute Kee for the drug offenses. The district court concluded that "the defendants conveyed to

35

the District Attorney information and evidence regarding the recovery of the narcotics from the Tavares vehicle in which plaintiffs were observed riding, and these *undisputed facts* were sufficient to give rise to probable cause to prosecute." Special App'x at 18 (emphasis added). However, the critical fact regarding the observations of Kee in the sedan was disputed. Although Detective Anzalone asserts he saw Kee in Tavares's sedan smoking marijuana shortly before he searched the vehicle and discovered other narcotics, there is evidence in the record that contradicts Anzalone's observations. In particular, Kee denies ever being in Tavares's vehicle on December 31, 2015, and claims that he did not see Tavares until Tavares arrived by foot on the scene immediately before the arrests. Kee also denies that the officers found a cell phone belonging to him in Tavares's car and, instead, contends that the police confiscated his phone from his pocket. Moreover, Tavares claims to have parked his car on Henderson Avenue approximately an hour and a half prior to his and Kee's arrest, which directly contradicts Detective Anzalone's statement that he saw Kee in Tavares's moving car shortly before the arrest. Tavares also testified that he drove alone before parking in front of 704 Henderson Avenue. And both Kee and Tavares deny smoking marijuana in Tavares's car on December 31, 2015.

In short, Detective Anzalone's statement that he observed Kee in the car with marijuana smoke emanating from the window was a critical fact that supported probable cause for Kee's arrest in connection with the drugs allegedly found in that car, and there is evidence in the record contradicting that fact.[16] In other words, if the testimony of Kee and Tavares is credited, which it must be on summary judgment, there is sufficient evidence in the record from which a rational jury could find that probable cause to prosecute Kee for the drug offenses was lacking. *See Rogoz*, 796 F.3d at 246. Therefore, the district court erred in concluding at the summary judgment stage that the defendants had probable cause to prosecute.[17]

Accordingly, we hold that the district court erred in granting summary judgment to Detective Anzalone on Kee's Section 1983 malicious prosecution claim, and likewise hold that the court erred in granting summary judgment to Anzalone and the City on Kee's state law malicious prosecution claim.

---

[16] As noted above, Kee similarly has placed in dispute Detective Anzalone's statement that he found a phone belonging to Kee in the sedan; Kee testified that his phone was seized from his pocket.

[17] To the extent the district court also referenced Kee's failure to proffer evidence of malicious intent, malice may be inferred if Kee is able to demonstrate a lack of probable cause or, as discussed *infra*, the fabrication of evidence. *See Boyd*, 336 F.3d at 78 ("A lack of probable cause generally creates an inference of malice.").

37

## D. Fair Trial

Kee also argues that the district court erred in granting summary judgment to the individual defendants on his Section 1983 fair trial claim. The claim is based upon fabricated information allegedly supplied by Detective Anzalone (and allegedly approved by Lieutenant Ryan with knowledge of the fabrication) to prosecutors orally and in arrest paperwork, which became the basis for the criminal court complaint against Kee that was signed by Anzalone and filed by prosecutors. In particular, Kee contends that "Anzalone's false statements to prosecutors that he saw Kee—smoking marijuana—in Tavares's car minutes before the arrest, and that he recovered Kee's phone from the vehicle, bear directly on whether Anzalone provided fabricated evidence to prosecutors that was likely to influence a jury's decision." Appellant's Br. at 18.

The district court found that the claim fails because the allegedly fabricated evidence was "not presented at a trial and had no impact on the fairness of any proceeding." Special App'x at 23. The district court also concluded that the allegedly fabricated documents—namely, the arrest paperwork and criminal court complaint—"contain inadmissible hearsay and do not meet the evidentiary bar to support a claim at the summary judgment stage." Special App'x at 22–23. The

district court further noted that Kee had "offered no evidence to dispute these documents beyond simply alleging that they are false." Special App'x at 23. As set forth below, we conclude that the district court erred in granting summary judgment on these grounds.

To prove a Section 1983 fair trial claim, a plaintiff must establish that (1) the officer created false information, (2) the officer forwarded the false information to prosecutors, (3) the false information was likely to influence a jury's decision, and (4) the plaintiff suffered a deprivation of life, liberty, or property as a result of the officer's actions. *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279–80 (2d Cir. 2016).

As defendants concede, after the district court's decision in this case, we held that a Section 1983 fair trial claim is available to a defendant even if the underlying criminal charges are dismissed and the fabricated evidence is never presented at trial. *See Frost v. N.Y.C. Police Dep't*, 980 F.3d 231 (2d Cir. 2020). In *Frost*, we explained that "[n]otwithstanding the nomenclature [*i.e.*, a fair *trial* claim], a criminal defendant's right to a fair trial protects more than the fairness of the trial itself." *Id.* at 249. Thus, "a criminal defendant can bring a fair trial claim even when no trial occurs at all." *Id.* This separate and distinct right, *see id.* at 250

("[W]e have expressly distinguished this right from the separate, although related, right not to be convicted based on the use of false evidence *at trial*."), "protects against [the] deprivation of liberty that results when a police officer fabricates and forwards evidence to a prosecutor that would be likely to influence a jury's decision, *were that evidence presented to the jury*," *id.* When a police officer violates a defendant's right to a fair trial in such a manner, "the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997). Indeed, "a Section 1983 claim for the denial of a right to a fair trial based on an officer's provision of false information to prosecutors can stand even if the officer had probable cause to arrest the Section 1983 plaintiff," and, thus, "fair trial claims cover kinds of police misconduct not addressed by false arrest or malicious prosecution claims." *Garnett*, 838 F.3d at 277–78. In short, the fact that Kee's criminal case did not proceed to trial does not preclude him from pursuing his fair trial claim.

Even though defendants acknowledge that a fair trial claim is cognizable even in the absence of a trial under *Frost*, they argued in their brief that Kee still must satisfy a "favorable termination" requirement that is identical in its scope to

40

that same element in the context of a malicious prosecution claim, and they asserted Kee failed to meet that requirement. The Supreme Court recently held that a fair trial claim based on fabricated evidence does not accrue until the underlying criminal proceeding terminates in the plaintiff's favor. *See McDonough v. Smith*, -- U.S. --, 139 S. Ct. 2149, 2158–61 (2019). Moreover, in *McDonough*, the Supreme Court suggested that there may be a need "for a context-specific and more capacious understanding of what constitutes 'favorable' termination for purposes of a § 1983 false-evidence claim." *Id.* at 2160 n.10. However, because the plaintiff's acquittal on the underlying criminal charges "was unquestionably a favorable termination," the Supreme Court had "no occasion to address the broader range of ways a criminal prosecution . . . might end favorably to the accused" in the fair trial context. *Id.*

As an initial matter, because we have already concluded that Kee has met the "favorable termination" requirement mandated for a malicious prosecution claim, defendants' argument is moot because, even if that identical standard were to be applied to a fair trial claim, Kee would still satisfy that requirement. In any event, in *Smalls v. Collins*, -- F.4th --, 2021 WL 3700194 (2d Cir. Aug. 20, 2021), we

41

recently addressed this issue in the wake of *McDonough* and rejected the precise

argument asserted by the defendants here:

> The core question . . . is what constitutes a favorable termination sufficient to trigger *McDonough*'s accrual rule for fabricated-evidence claims. The defendants point out that *McDonough*'s accrual rule for fabricated-evidence claims was premised on an analogy to malicious-prosecution claims and argue that *McDonough*'s favorable-termination requirement should thus be interpreted to be coextensive with malicious prosecution's favorable-termination requirement, under which a plaintiff must establish that the proceeding ended in a manner indicative of innocence. This argument is inconsistent with the reasoning and holding of *McDonough* and, we think, lacks merit.

*Id.* at 11. Instead, we held that "[w]here the plaintiff asserts a section 1983 fair-trial

claim based on fabricated evidence, all that is required is that the underlying

criminal proceeding be terminated in such a manner that the lawsuit does not

impugn an *ongoing* prosecution or *outstanding* conviction." *Id.* at 13.[18]

Applying that standard here, because Kee's underlying criminal proceeding

was dismissed on speedy trial grounds, his fair trial claim does not impugn an

ongoing prosecution, nor would it potentially invalidate any outstanding

conviction if he were to prevail. Accordingly, this dismissal on speedy trial

---

[18] In light of this holding, defendants concede in a recent letter to this Court that "*Smalls* forecloses our argument that, in order to bring a fair trial claim, Kee must show that his criminal proceeding terminated in a manner indicative of his innocence." Appellees' Rule 28(j) Letter at 1 (Aug. 24, 2021), ECF No. 67.

grounds constitutes a favorable termination under the standard articulated in

*Smalls*, which is necessary for the accrual of a fair trial claim based upon fabricated

evidence under *McDonough*.  Thus, we turn to Kee's challenge to the district court's

decision regarding whether certain evidence in the record can be used by Kee to

establish his fair trial claim.

In this case, Kee's fair trial claim rests on the alleged false statements that

Detective Anzalone supplied to the RCDA, which provided the factual predicate

for the charges leveled against Kee in the criminal complaint and to which

Anzalone swore.  Our decision in *Garnett* makes clear that Kee may rely on

allegedly false information in the criminal complaint, as well as other documents

in the record—such as the RCDA's intake form ("data analysis sheet") and arrest

paperwork —to bring a "claim for a denial of the right to a fair trial."  838 F.3d at

279 ("[*A*]*ny* information fabricated by an officer can serve as the basis of a claim

for a denial of the right to a fair trial.").  Thus, although our decision in *Ricciuti v.*

*New York City Transit Authority* addressed an allegedly fabricated confession, we

explained in *Garnett* that "*Ricciuti*'s holding"—that an officer's violation of a

defendant's right to a fair trial is redressable in a Section 1983 action—"applies to

falsified information contained in an officer's account of his or her observations of

43

alleged criminal activity which he or she conveys to prosecutors." *Garnett*, 838

F.3d at 280. Such falsified information underlying the claim may be conveyed in

documents, or orally, to prosecutors.

Moreover, although the district court concluded that inadmissible hearsay

(which the district court did not identify) in the documents prevented Kee from

using those documents to support his claim on summary judgment, we disagree.

As an initial matter, to the extent that the district court may have been referring to

the allegedly fabricated statements by Detective Anzalone contained in any

documents, such statements are not hearsay because they are not being offered for

the truth of the matter asserted. *See* Fed. R. Evid. 801(c). Moreover, other

statements in any documents created by Detective Anzalone about what he

observed would be admissible as party admissions. *See* Fed. R. Evid. 801(d)(2). In

any event, insofar as the arrest paperwork or other documents do contain

inadmissible hearsay, we note that, so long as Kee can show that admissible

evidence would be available at trial, summary judgment is inappropriate at this

stage in the litigation. *Cf. Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*,

769 F.2d 919, 924 (2d Cir. 1985). Defendants do not argue on appeal that Kee will

be unable to overcome any hearsay issues relating to the admissibility of

documents that he contends contain—or were based on—fabricated information, either provided orally or in writing by Detective Anzalone. In fact, Detective Anzalone conceded in his deposition that he conveyed his version of the relevant events to prosecutors in written documents as the criminal complaint was being drafted, and seemed to suggest that at least some of the information was also orally conveyed to prosecutors. Thus, we cannot conclude at this juncture that Kee will be unable to utilize the contents of these documents from an evidentiary standpoint in conjunction with other evidence in the case, to attempt to prove that Detective Anzalone conveyed fabricated evidence to prosecutors.

Finally, we disagree with the district court's conclusion that Kee has "offered no evidence to dispute these documents beyond simply alleging that they are false." Special App'x at 23. As noted *supra*, to support his allegation that the observation of him smoking marijuana in Tavares's car is fabricated, Kee has offered his testimony, as well as the testimony of Tavares, that he was never in the car prior to the arrest. For purposes of summary judgment, we must assume that the jury will credit plaintiff's version of the events. *See Lucente*, 980 F.3d at 296.

Thus, construing the evidence most favorably to Kee, there is a triable issue as to whether Detective Anzalone created false statements that were conveyed to

45

the RCDA to support the charges in the criminal complaint (which Anzalone signed), and whether the allegedly false statements were likely to influence a jury's decision if the criminal case had proceeded to trial.[19]  Accordingly, the district court erred in granting summary judgment to the individual defendants on Kee's Section 1983 fair trial claim.

## III.  CONCLUSION

For the reasons set forth above, we **VACATE** the district court's dismissal of Kee's malicious prosecution claims against Detective Anzalone and the City and his fair trial claim against the individual defendants, we **AFFIRM** the district court's grant of summary judgment in all other respects, and we **REMAND** the case to the district court for further proceedings consistent with this opinion.

---

[19]  We note, with respect to Lieutenant Ryan's liability, Kee generally asserted to the district court that Ryan approved of the information supplied to prosecutors by Detective Anzalone with knowledge of the fabrication.  On appeal, defendants make no specific arguments regarding the sufficiency of the proof on the fair trial claim as it relates to Lieutenant Ryan, but rather make general legal arguments (discussed above) that would apply to both individual defendants.  Because we have rejected those arguments, the fair trial claim as to Lieutenant Ryan also survives summary judgment.