*Moreau v. Ellsworth*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 16th day of May, two thousand twenty-three.

PRESENT:
> DENNIS JACOBS,
> RICHARD J. SULLIVAN,
> MARIA ARAÚJO KAHN,
> > *Circuit Judges.*

_____

EMILE MOREAU,

> *Plaintiff-Appellant,*

v.                                                                          No. 21-2997

SHERRY ELLSWORTH, Mailroom
Supervisor, Eastern NY Correctional
Facility, JUSTIN VON DER HEYDE,
Correction Officer, Eastern NY
Correctional Facility, ANTHONY BLACK,
Grievance Supervisor, Eastern NY
Correctional Facility,

> *Defendants-Appellees.**

_____

---

* The Clerk of Court is respectfully directed to amend the official case caption as set forth above.

For Plaintiff-Appellant:                    Emile Moreau, pro se, Brooklyn, NY.

For Defendants-Appellees:            Barbara D. Underwood, Solicitor General, Jeffrey W. Lang, Deputy Solicitor General, Alexandria Twinem, Assistant Solicitor General, *for* Letitia James, Attorney General of the State of New York, Albany, NY.

Appeal from a judgment of the United States District Court for the Northern District of New York (David N. Hurd, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Emile Moreau, proceeding pro se, appeals from the district court's grant of summary judgment on his First and Eighth Amendment claims in favor of three Eastern NY Correctional Facility ("Eastern") officials – Mailroom Supervisor Sherry Ellsworth, Correction Officer Justin von der Heyde, and Grievance Supervisor Anthony Black (together, "Defendants"). We review a district court's grant of summary judgment de novo, *see Kee v. City of New York*, 12 F.4th 150, 157–58 (2d Cir. 2021), and will affirm when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R.

2

Civ. P. 56(a).   We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

Prisoners have a First Amendment right of access to the courts.  *Lewis v. Casey*, 518 U.S. 343, 346 (1996).   In assessing whether a state has violated that right – here, by allegedly interfering with legal mail – we ask whether the plaintiff has demonstrated an "actual injury," that is, whether he has lost an opportunity to pursue a nonfrivolous legal claim.   *Id.* at 349; *see also Christopher v. Harbury*, 536 U.S. 403, 414–15 (2002).   Of course, as with many rights in prison, courts must exhibit "due regard for the inordinately difficult undertaking that is modern prison administration."   *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989) (internal quotation marks omitted).   The alleged unconstitutional practice therefore must also be part of a pattern and practice of interfering with incoming legal mail.   *See Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003) (explaining that an "inmate must show that prison officials regularly and unjustifiably interfered with the incoming legal mail" (internal quotation marks omitted)).

Here, Moreau has offered no evidence to support his claim that Ellsworth interfered with his legal mail in violation of the First Amendment.   First, Moreau alleges that Ellsworth failed to deliver a letter from the Appellate Division of the

New York State Supreme Court, resulting in the dismissal of his appeal for failure to timely perfect. But while Moreau makes much of the fact that this letter was never delivered to him, Eastern's mailroom logbook shows that no such letter was ever received, and Moreau has offered nothing to suggest that the logbook was tampered with or altered. Second, Moreau contends that Ellsworth tried to cover up the tracks of her scheme by forging his signature for mail she did not deliver. This theory likewise lacks support in the record, as the signatures in question perfectly match others that Moreau does not dispute are his. Third, Moreau insists that Ellsworth never mailed his motion seeking leave to file a second or successive habeas petition and instead returned it to him a month later in a different envelope. The return envelope, however, was marked as "FOUND LOOSE IN MAIL" by the U.S. Postal Service, demonstrating that the letter was in fact mailed. Fourth, and finally, Moreau complains that Ellsworth interfered with a so-called "complaint" he sent to the U.S. Supreme Court and a letter he received in response. Yet Moreau nowhere explains how the Supreme Court's failure to address his complaint on the merits supports the inference that Ellsworth removed the complaint from the outgoing mail and replaced it with her "own papers." Moreau Br. at 7. Nor has he demonstrated how the delay in the delivery of the

4

Supreme Court's letter – which lasted for no more than a few days – resulted in an "actual injury" of constitutional significance. *See Goord*, 320 F.3d at 351–52 ("Mere delay in being able to work on one's legal action or communicate with the courts does not rise to the level of a constitutional violation." (internal quotation marks omitted)). Therefore, because Moreau has failed to produce evidence to support his claims of mail interference, we affirm the district court's decision dismissing his First Amendment claim.[1]

Moreau also contends that Defendants violated his Eighth Amendment rights when they ordered him to walk up stairs despite his knee condition, which caused him to collapse, fall down the stairs, and injure his head, neck, shoulder, and legs. But under the Prison Litigation Reform Act, prisoners may not bring any action "with respect to prison conditions under . . . Federal law, . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege

---

[1] While Moreau also alleged First Amendment claims of retaliation, he has forfeited those claims by failing to challenge the district court's dismissal of them in his opening brief. *See LoSacco v. City of Middletown*, 71 F.3d 88, 93 (2d Cir. 1995) (explaining that appellate courts "need not manufacture claims of error for an appellant proceeding pro se, especially when he has raised an issue below and elected not to pursue it on appeal").

excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). To exhaust administrative remedies, an inmate must avail himself of "all steps that the [prison-grievance system] holds out, and [do] so *properly* (so that the [prison-grievance system] addresses the issues on the merits)." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (internal quotation marks omitted).

In New York, there is a three-tiered process for adjudicating inmate grievances. First, an inmate must file a grievance with the facility's Inmate Grievance Resolution Committee ("IGRC") within twenty-one days of the incident. N.Y. Comp. Codes R. & Regs. ("NYCRR") tit. 7, § 701.5(a)(1). If the IGRC renders an adverse decision, the inmate may appeal to the superintendent of the facility, who then has twenty days to respond. *Id.* § 701.5(c)(3)(i). The prisoner may appeal an adverse decision of the superintendent by submitting a Form 2133 to the Central Office Review Committee ("CORC") within seven days of the superintendent's decision; the CORC, in turn, must render a decision within thirty days of receiving the appeal. *Id.* § 701.5(d)(1)(i), (3)(ii). Matters not decided within the statutory time limits "may be appealed to the next step." *Id.* § 701.6(g)(2).

Here, the undisputed facts demonstrate that Moreau failed to follow these procedures. On June 8, 2017, Grievance Supervisor Black sent Moreau a letter stating that the IGRC had received his complaint concerning the stair incident that occurred on May 8, 2017. The letter explained that the complaint was untimely, and that Moreau was thus required to file a request for an extension of time. While Moreau argues that the "complaint" was in fact timely, it is undisputed that Moreau appealed Black's letter to the CORC without having received a decision from the superintendent of the facility and before the window for the superintendent to respond had closed. Moreau's appeal to the CORC was thus in violation of New York's inmate-grievance process. Indeed, Moreau's own papers indicate that he skirted the proper procedures when, on June 14, he completed the entire Form 2133 himself, using the space for the superintendent's decision to recite his grievance while leaving blank the line reserved for the Grievance Clerk's signature. *See* NYCRR tit. 7, § 701.5(d)(1)(i) (requiring inmates to use Form 2133 to appeal a decision of the superintendent). On this record, we have no trouble concluding that Moreau failed to exhaust his administrative remedies.

7

Nor are we persuaded that the administrative remedies were "unavailable" to Moreau. *See Ross v. Blake*, 578 U.S. 632, 642 (2016) (explaining that inmates need not exhaust administrative remedies that are unavailable). We have held that an administrative procedure is unavailable when (1) "it operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) it is "so opaque that it becomes, practically speaking, incapable of use"; or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 123–24 (2d Cir. 2016) (internal quotation marks omitted).

There is no evidence that the grievance process was unavailable here. In arguing otherwise, Moreau contends that Black had a "usual" practice of falsely claiming that he never received grievances. Moreau Br. at 28 (emphasis omitted). But Moreau asserts no facts beyond this conclusory statement to suggest that he was prevented from pursuing his claims through the ordinary grievance process; the record evidence demonstrates that Moreau and other inmates at Eastern were able to appeal from several unfavorable IGRC decisions during the same period.

8

There is thus no basis to conclude that the inmate-grievance process was unavailable.

We have considered Moreau's remaining arguments and find them to be without merit.   Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court